JACKSON, Justice.
In this appeal we consider whether section 120-133 of the North Carolina General Statutes waives the right of legislators to assert the attorney-client privilege or work-product doctrine in litigation concerning redistricting. Because any waiver of such well-established legal principles must be clear and unambiguous, we conclude that the statute’s silence on such waivers renders the statute ambiguous as to this issue. After further analysis, we conclude that the General Assembly did not intend to waive either the attorney-client privilege or work-product doctrine when it enacted section 120-133. While we acknowledge that the General Assembly may choose to waive its legal rights, we are unwilling to infer such a sweeping waiver unless the General Assembly leaves no doubt about its intentions. Accordingly, we affirm in part and reverse in part the order of the three-judge panel for the reasons stated below.
On 27 and 28 July 2011, the North Carolina General Assembly enacted new redistricting plans for the North Carolina House of Representatives, North Carolina Senate, and United States House of Representatives pursuant to Article II, Sections 3 and 5 of the North Carolina Constitution and Title 2, sections 2a and 2c of the United States Code. During the legislative process leading up to and following enactment, the defendant members of the General Assembly, including Senate President Pro Tempore Philip Berger, House Speaker Thom Tillis, Senate Redistricting Chair Robert Rucho, and House Redistricting Chair David Lewis, received legal advice from lawyers employed by the Attorney General of North Carolina and two private law firms, Ogletree, Deakins, Nash, Smoak & Stewart, P.C. (“Ogletree Deakins”) and Jones Day. Like the lawyers who are employed by the Attorney General, the Ogletree Deakins and Jones Day attorneys were paid with State funds.
On 2 September 2011, the Attorney General filed an action to preclear the redistricting plans in the United States District Court for the District of Columbia pursuant to Section five of the Voting Rights Act of 1965, North Carolina v. Holder, No. 1:11-CV-01592 (D.D.C. Sept. 2, 2011), and simultaneously sought administrative preclearance from the United States Attorney General. The redistricting plans were precleared administratively by the United States Attorney General on 1 *335 November 2011. As a result, the federal district court dismissed as moot the State’s preclearance action on 8 November 2011.
On 1 November 2011, the General Assembly also alerted the United States Department of Justice that an error in the computer software program used to draw the redistricting plans had caused certain areas of the state to be omitted from the original plans. The General Assembly passed legislation on 7 November 2011 to cure this technical defect. The United States Attorney General precleared the revised plans on 8 December 2011.
Meanwhile, plaintiffs, the North Carolina State Conference of Branches of the NAACP, League of Women Voters of North Carolina, Democracy North Carolina, North Carolina A. Philip Randolph Institute, and individual registered voters, filed separate suits on 3 and 4 November 2011, challenging the constitutionality of the redistricting plans and seeking a preliminary injunction to prevent defendants from conducting elections using the redistricting plans. In accordance with section 1-267.1 of the North Carolina General Statutes, the Chief Justice appointed a three-judge panel to hear both actions.
On 19 December 2011, the panel consolidated the cases. On the same day defendants filed their answers and moved to dismiss the suit. Thereafter, on 20 January 2012, the panel entered an order denying plaintiffs’ motion for a preliminary injunction. The panel also entered an order on 6 February 2012 allowing in part and denying in part defendants’ motion to dismiss.
Most relevant to the issues before us, on 8 and 17 November 2011, plaintiffs served requests for production of documents on defendants pursuant to Rule 34 of the North Carolina Rules of Civil Procedure. These requests sought production of a variety of communications concerning enactment of the redistricting plans. After receiving an extension of time to respond, on 13 January 2012, defendants served written responses to plaintiffs’ discovery requests, in which they objected to the production of certain categories of documents based upon the attorney-client privilege, legislative privilege, or work-product doctrine. On 24 February 2012, defendants amended their objections, providing additional information regarding their privilege claims. Specifically, defendants identified the following communications as privileged:
1. Emails to and from Tom Farr, Phil Strach, Alec Peters, and Tiare Smiley to or from Bob Rucho, David Lewis, Thom Tillis, *336 Phil Berger or their legislative staff members[1] acting on their behalf or at their direction regarding legal advice on the impact of census data on redistricting plans.
2. Emails to and from Tom Farr, Phil Strach, Alec Peters, and Hare Smiley to or from Bob Rucho, David Lewis, Thom Hllis, Phil Berger or their legislative staff members acting on their behalf or at their direction regarding legal requirements for a fair process under section 5 of the Voting Rights Act.
3. Emails to and from Tom Farr, Phil Strach, Alec Peters, and Hare Smiley to or from Bob Rucho, David Lewis, Nelson Dollar, Thom Hllis, Phil Berger or their legislative staff members acting on their behalf or at their direction regarding legal advice in preparation for meetings of the House and Senate Redistricting Committees.
4. Emails to and from Tom Farr, Phil Strach, Michael Carvin, Michael McGinley, Alec Peters, and Hare Smiley to or from Bob Rucho, David Lewis, Nelson Dollar, Thom Hllis, Phil Berger or their legislative staff members acting on their behalf or at their direction regarding legal requirements for legislative and congressional districts.
5. Emails to and from Tom Farr, Phil Strach, Michael Carvin, Michael McGinley, Alec Peters, and Hare Smiley to or from Bob Rucho, David Lewis, Nelson Dollar, Thom Hllis, Phil Berger or their legislative staff members acting on their behalf or at their direction regarding legal advice regarding any public statements about redistricting or proposed redistricting plans.
6. Emails to and from Tom Farr, Phil Strach, Michael Carvin, Michael McGinley, Alec Peters, and Hare Smiley to or from Bob Rucho, David Lewis, Thom Hllis, Phil Berger or their legislative staff members acting on their behalf or at their direction regarding legal advice on the preclearance process for redistricting plans.
7. Emails to and from Tom Farr, Phil Strach, Michael Carvin, Michael McGinley, Alec Peters, and Hare Smiley to or from Bob Rucho, David Lewis, Nelson Dollar, Thom Hllis, Phil *337 Berger or their legislative staff members acting on their behalf or at their direction regarding legal advice for the redistricting session of the General Assembly.
On 29 February 2012, plaintiffs filed a motion to compel discovery, seeking production of, among other things, “all communications between legislators and core staff and all lawyers or consultants paid with state funds, and unredacted invoices and time sheets.” In support of their motion, plaintiffs cited section 120-133 of the North Carolina General Statutes, which reads:
Notwithstanding any other provision of law, all drafting and information requests to legislative employees and documents prepared by legislative employees for legislators concerning redistricting the North Carolina General Assembly or the Congressional Districts are no longer confidential and become public records upon the act establishing the relevant district plan becoming law.
N.C.G.S. § 120-133 (2011).[2] Plaintiffs argued that section 120-133 constitutes a “broad and unambiguous” waiver by the General Assembly of “any privileges” relating to redistricting communications once the relevant act becomes law. Plaintiffs contended that section 120-133 compelled the production of documents prepared by defendants’ counsel, including lawyers from the Attorney General’s Office and private firms.
On 11 April 2012, defendants responded to plaintiffs’ motion, denying that section 120-133 waives, or even addresses, the common law attorney-client privilege or work-product doctrine or that the statute applies to the Attorney General’s Office. Defendants’ response included an engagement letter executed in 1991 by Daniel T. Blue, Jr., who then was serving as Speaker of the North Carolina House of Representatives, and outside counsel James E. Ferguson, II of Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A (“Ferguson Stein”). In the letter, Ferguson Stein agreed to provide legal advice to the North Carolina House of Representatives concerning redistricting. The letter stated that “[b]ecause communications between the firm *338 and members of the House are privileged attorney-client communications, N.C.G.S. §[ ] 120-133 shall not apply to communications, including written communications, between any attorneys in the firm and any member of the North Carolina House of Representatives.”
On 20 April 2012, the three-judge panel entered a written order allowing plaintiffs’ motion to compel. Most significantly, the panel concluded:'
20. Although certain communications by and between members of the General Assembly and legal counsel pertaining to redistricting plans may have originally been cloaked with privilege, the General Assembly, by enacting N.C. Gen. Stat. § 120-133, expressly waived any and all such privileges once those redistricting plans were enacted into law.
21. This waiver is clear and unambiguous; it is applicable “notwithstanding any other provision of law.” The waiver applies regardless of whether the privilege is claimed under a theory of attorney-client privilege, the work-product doctrine or legislative privilege.
Accordingly, the panel stated that “[a]ll drafting and information requests ... to legislative employees” and “[documents . . . prepared by legislative employees” concerning the redistricting plans were “ ‘no longer confidential’ ” and became “ ‘public record’ ” when, the redistricting plans were enacted, (underlining omitted). The panel concluded that counsel from Ogletree Deakins, Jones Day, and any legislative staff attorneys “were ‘legislative employees’ ” because they “served as ‘consultants and counsel’ ” to members of the General Assembly and were paid with State funds. The panel stated that this waiver of confidentiality “d[id] not extend to documents or communications to or from attorneys who were . . . members of the North Carolina Attorney General’s staff because the Attorney General, [as] a member of the Council of State, is not a ‘legislative employee’ and neither are his staff attorneys.”
The panel also concluded that any documents prepared “solely in connection with the redistricting litigation” remain confidential pursuant to the attorney-client privilege or work-product doctrine; however, the panel did not identify the specific documents to which the attorney-client privilege or work-product doctrine would apply. Instead, it invited the parties to negotiate “a reasonable means of identifying categories of documents that ought to remain confidential.”
*339 Defendants appealed to this Court as of right pursuant to section 120-2.5 of the North Carolina General Statutes. See Pender Cnty. v. Bartlett, 361 N.C. 491, 497, 649 S.E.2d 364, 368 (2007) (interpreting “N.C.G.S. § 120-2.5 to mean that any appeal from a three-judge panel dealing with apportionment or redistricting pursuant to N.C.G.S. § 1-267.1 is direct to” the Supreme Court of North Carolina), aff’d sub. nom. Bartlett v. Strickland, 556 U.S. 1, 173 L. Ed. 2d 173 (2009). Defendants also asked the three-judge panel to stay its discovery order during the pendency of this appeal. The panel issued a temporary stay, but set an expiration date of 11 May 2012. Consequently, defendants filed a motion for temporary stay and petition for writ of supersedeas with this Court on 4 May 2012. On 11 May 2012, we allowed defendants’ motion for temporary stay and petition for writ of supersedeas and expedited the hearing of this appeal.
Before this Court plaintiffs argue that they are entitled to all preenactment communications and documents relating to redistricting pursuant to section 120-133 of the North Carolina General Statutes. Plaintiffs contend that section 120-133 is unambiguous and by its plain language waives the right of legislators to assert the attorney-client privilege or work-product doctrine for communications and documents made during redistricting. In contrast, defendants argue that, strictly construed, section 120-133 only operates as a narrow waiver of legislative confidentiality that is codified in Article 17, Chapter 120 of the North Carolina General Statutes. Defendants therefore contend that section 120-133 does not waive their right to invoke the attorney-client privilege or work-product doctrine for communications and documents made before enactment of the redistricting plans. The parties agree that the attorney-client privilege and work-product doctrine apply to relevant post-enactment communications and documents.
This matter presents a question of statutory interpretation, which we review de novo. In re Vogler Realty, Inc., 365 N.C. 389, 392, 722 S.E.2d 459, 462 (2012). “The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent.” Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990). When there is no reference whatsoever to the attorney-client privilege in the statute, a clear and unambiguous waiver is absent, meaning the common law right to assert the privilege prevails. See N.C.G.S. § 4-1 (2011) (“All such parts of the common law as were heretofore in force and use within this State . . . and which has not been otherwise provided for in whole or *340 in part, not abrogated, repealed or become obsolete, are hereby declared to be in full force within this State.”). After carefully reviewing the parties’ arguments, we conclude that section 120-133 cannot reasonably be construed to waive these common law doctrines because the section in no way mentions, let alone explicitly waives, the attorney-client privilege or work-product doctrine.
“The attorney-client privilege is one of the oldest recognized privileges for confidential communications. The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration, of justice.” Swidler & Berlin v. United States, 524 U.S. 399, 403, 141 L. Ed. 2d 379, 384 (1998) (citations and quotation marks omitted). As such, “[t]he public’s interest in protecting the attorney-client privilege is no trivial consideration .... The privilege has its foundation in the common law and can be traced back to the sixteenth century.” In re Miller, 357 N.C. 316, 328, 584 S.E.2d 772, 782 (2003) (citations omitted). Although the privilege “is well-grounded in the jurisprudence of this State,” id.-, see also N.C.G.S. § 4-1, we emphasize that the privilege “has not been statutorily codified,” in re Miller, 357 N.C. at 329, 584 S.E.2d at 783.
“[W]hen the relationship of attorney and client exists, all confidential communications made by the client to his attorney on the faith of such relationship are privileged and may not be disclosed.” Id. at 328, 584 S.E.2d at 782 (citations and quotation marks omitted). Given that the privilege advances complete and frank communications, it “encourag[es] clients to make the fullest disclosure to their attorneys [and] enables the latter to act more effectively, justly and expeditiously.” Id. at 329, 584 S.E.2d at 782 (citations and quotation marks omitted).
We are unaware of — and neither plaintiffs nor defendants have identified — any decisions by this Court fully abrogating the attorney-client privilege in any context as plaintiffs advocate here; however, the General Assembly itself has abrogated the attorney-client privilege on three occasions. In each instance the waiver has been clear and unambiguous. See N.C.G.S. § 15A-1415(e) (2011) (stating that a criminal defendant who alleges ineffective assistance of prior counsel “shall be deemed to waive the attorney-client privilege” to the extent that prior counsel “reasonably believes” revealing these privileged communications is “necessary to defend against the allegations”); id. § 78C-97(c) (2011) (stating that a student-athlete who *341 enters into a representation agreement with an agent “will be deemed to waive the attorney-client privilege” regarding certain records retained by the agent); id. § 127A-62(h)(3) (2011) (stating that a defendant who alleges ineffective assistance of prior counsel in court-martial proceedings “shall be deemed to waive the attorney-client privilege” to the extent that prior counsel reasonably believes revealing these privileged communications is “necessary to defend against the allegations”). [3]
The text of section 120-133 includes no such clear and unambiguous waiver of the attorney-client privilege or work-product doctrine. Instead, section 120-133 states only:
Notwithstanding any other provision of law, all drafting and information requests to legislative employees and documents prepared by legislative employees for legislators concerning redistricting the North Carolina General Assembly or the Congressional Districts are no longer confidential and become public records upon the act establishing the relevant district plan becoming law.
Id. § 120-133. There is no reference in this section to either the attorney-client privilege or work-product doctrine. “[I]t is always presumed that the Legislature acted with full knowledge of prior and existing law.” Ridge Cmty. Investors, Inc. v. Berry, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977). Necessarily, this presumption must include the common law. See N.C.G.S. § 4-1. In contrast, the General Assembly has set a clear limitation on the attorney-client privilege in the Public Records Act. N.C.G.S. § 132-1.1(a) (2011). There the legislature placed a three-year restriction on the length of time that a confidential communication between an attorney and a public client — such as “any public board, council, commission or other governmental body of the State or of any county, municipality or *342 other political subdivision or unit of government" — may remain unavailable for public inspection. Id.
Plaintiffs argue that the phrase “[notwithstanding any other provision of law” in section 120-133 waives “any privileges” regarding redistricting legislation. Nonetheless, we begin by observing that the statute does not define the term “provision” in Article 17. “In the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute. ” Perkins v. Ark. Trucking Servs., Inc., 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000). Black’s Law Dictionary defines “provision” as “[a] clause in a statute, contract, or other legal instrument.” Black’s Law Dictionary 1345 (9th ed. 2009) (emphasis added). This definition suggests that the General Assembly’s use of the word “provision” was meant to refer only to other statutory clauses and not to common law doctrines such as the attorney-client privilege and work-product doctrine. Plaintiffs’ counsel conceded as much during oral argument. This interpretation is bolstered by the fact that the General Assembly repeatedly has demonstrated that it knows how to be explicit when it intends to repeal or amend the common law. See, e.g., N.C.G.S. § 48A-1 (2011) (“The common-law definition of minor insofar as it pertains to the age of the minor is hereby repealed and abrogated.”); id. § 50-6 (2011) (“Notwithstanding the provisions of G.S. 50-11, or of the common law, a divorce under this section shall not affect the rights of a dependent spouse with respect to alimony which have been asserted in the action or any other pending action.”); id § 160A-626(b) (2011) (“The Authority may contract with any railroad to allocate financial responsibility for passenger rail services claims, . . . notwithstanding any other statutory, common law, public policy, or other prohibition against same . . . .”); see also id. § 36C-8-816.1(g) (2011) (recognizing that the phrase “provision of law” does not refer to the common law by stating: “Nothing in this section shall be construed to abridge the right of any trustee who has a power to appoint property in further trust that arises under the terms of the original trust or under any other section of this Chapter or under another provision of lawor under common law.”).
We read section 120-133 in the context of the entire article in which it appears. See In re D.S., 364 N.C. 184, 187, 694 S.E.2d 758, 760 (2010). Doing so militates against the conclusion that the General Assembly intended to waive its attorney-client privilege and work-product doctrine. As we have noted in other cases, the title of an act may be an indication of legislative intent. See, e.g., State v. Flowers, *343 318 N.C. 208, 215, 347 S.E.2d 773, 778 (1986) (relying on the title of N.C.G.S. § 15A-136 to support the Court’s conclusion that the statute addresses a matter of venue). Section 120-133 appears in Chapter 120, Article 17 of the General Statutes and is entitled “Confidentiality of Legislative Communication’s.” In light of this title, we may reasonably infer that Article 17 was intended to govern a specific class of communications. Indeed, a North Carolina House of Representatives Resolution introduced in 1983, shortly before Article 17 was enacted, requested a Legislative Research Commission study pertaining to confidentiality of “legislative communications.” See H.R. Res. 1461, 1983 Gen. Assemb., Reg. Sess. (N.C. 1983). As such, Article 17 governs an important aspect of the General Assembly’s internal operations. In contrast to the Public Records Act, which was designed to disclose documentary material of State government agencies or subdivisions to facilitate public inspection and examination, Article 17 was enacted to protect legislative communications from disclosure so as to preserve the integrity of the legislative process. Compare N.C.G.S. § 132-l(b) (2011) (stating that “public records and public information... are the property of the people” and “it is the policy of this State that the people may obtain copies of their public records and public information”) with id. §§ 120-131, -131.1 (2011) (emphasizing that specified legislative communications “are confidential” or “shall be kept confidential”). In fact, according to a 1984 Legislative Research Commission report, Article 17 was created to address concerns that the General Assembly’s common law legislative privilege could be eroded by an expansive reading of the Public Records Act. See N.C. Legislative Research Comm’n, Confidentiality of Legislative Communications, 1983 Gen. Assemb. (1984 Reg. Sess.) 2 (June 7, 1984) (“[S]ince its enactment in 1935, the public records law had been read much more broadly than originally intended.”). We also note that the General Assembly’s specific use of the term “confidential” thirteen times throughout Article 17, see, e.g., N.C.G.S. § 120-130(a), -131(a), -131.1(a), (al) (2011) (stating, for example, “is confidential,” “are confidential,” and “shall be kept confidential”), demonstrates that Article 17 was enacted to shield legislative communications from disclosure.
Operationally, Article 17 places a veil of confidentiality over several specific legislative communications: (1) drafting and information requests made to legislative employees by legislators, N.C.G.S. § 120-130 (2011); (2) documents produced by legislative employees upon the request of legislators, id. § 120-131 (2011); and *344 (3) requests from legislative employees to employees in other State agencies for assistance in the preparation of fiscal notes and evaluation reports, id,. § 120-131.1 (2011). Article 17 also prohibits legislative employees from disclosing confidential information obtained in the legislative context. Id. § 120-132 (2011). Moreover, Article 17 expressly states that these legislative communications are not public records pursuant to the Public Records Act. See id. §§ 120-130(d), -131(b), -131.1(al).
Section 120-133 provides a narrow exception to the protections generally established in Article 17 to help ensure the State’s compliance with the requirements of the Voting Rights Act. See 42 U.S.C. § 1973c (2012) (outlining the preclearance procedure); 28 C.F.R. § 51.27 (2012) (listing the “[r]equired contents” of a “submitted change affecting voting”); id. § 51.28 (2012) (listing supplemental contents for submissions). In effect, section 120-133 permits “all drafting and information requests to legislative employees and documents prepared by legislative employees for legislators concerning redistricting” to become “public records” for this limited purpose. N.C.G.S. § 120-133. We observe that, in contrast to the other sections of Article 17, section 120-133 makes no reference to the Public Records Act. We presume that the General Assembly “carefully chose each word used” in drafting the legislation. N.C. Dep’t of Corr. v. N.C. Med. Bd., 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009). The General Assembly could have referenced the Public Records Act in section 120-133, but chose not to do so. This omission demonstrates that the General Assembly intended for its redistricting communications to be made public in accordance with the narrow scope of section 120-133, rather than the broad scope of the Public Records Act. Given the limited purpose of section 120-133 as read within the full context of Article 17, we can discern no clear legislative intent by the General Assembly to waive the common law attorney-client privilege or work-product doctrine.
As a part of our analysis of section 120-133, we must also emphasize that this Court operates within a “tripartite system of government.” Bacon v. Lee, 353 N.C. 696, 712, 549 S.E.2d 840, 851, cert. denied, 533 U.S. 975, 150 L. Ed. 2d 804 (2001). “The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other.” N.C. Const. art. I, § 6. “[T]he principal function of the separation of powers[ ] ... is to maintain the tripartite structure of the ... Government — and thereby protect individual liberty — by providing a safeguard against the *345 encroachment or aggrandizement of one branch at the expense of the other.” Bacon, 353 N.C. at 715, 549 S.E.2d at 853 (alterations in original) (quotation marks omitted). As such, “the fundamental law guarantees to the Legislature the inherent right to discharge its functions and to regulate its internal concerns in accordance with law without interference by any other department of the government.” Person v. Bd. of State Tax Comm’rs, 184 N.C. 499, 503, 115 S.E. 336, 339 (1922). “All power which is not expressly limited by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution.” State ex rel. Martin v. Preston, 325 N.C. 438, 448-49, 385 S.E.2d 473, 478 (1989). The General Assembly can waive its common law rights in addition to its statutory rights, and whether it chooses to do so is not within the purview of this Court. Nevertheless, we will not lightly assume such a waiver by a coordinate branch of government. Therefore, without a clear and unambiguous statement by the General Assembly that it intends to waive its attorney-client privilege or work-product doctrine, we are compelled to exercise judicial restraint and defer to the General Assembly’s judgment regarding the scope of its legislative confidentiality. Such a clear and unambiguous statement is notably absent from section 120-133. Accordingly, we must conclude that the General Assembly did not intend to waive the attorney-client privilege or work-product doctrine with respect to redistricting litigation when it enacted section 120-133.
For the foregoing reasons, we reverse the three-judge panel’s conclusion of law that the General Assembly waived the attorney-client privilege and work-product doctrine for pre-enactment communications and documents through section 120-133; however, we affirm the panel’s conclusion that the attorney-client privilege and work-product doctrine apply to relevant post-enactment communications and documents. This case is remanded to the three-judge panel for additional proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; and REMANDED.
Justice BEASLEY did not participate in the consideration or decision of this case.

. Defendants also stated that the term “legislative staff members” was limited to: (1) Jason Kay, General Counsel for Representative Tillis; (2) Tracy Kimbrell, General Counsel for Senator Berger; (3) Jim Blaine, Chief of Staff for Senator Berger; and (4) Brent Woodcox, redistricting counsel for Senators Berger and Rucho.

. The term “legislative employee” is defined to include “consultants and counsel to members and committees of either house of the General Assembly or of legislative commissions who are paid by State funds.” N.C.G.S. § 120-129(2) (2011). However, the term “legislative employee” excludes “members of the Council of State.” Id. In addition, the term “documents]” is defined to include “all records, papers, letters, maps ... or other documentary material regardless of physical form or characteristics.” N.C.G.S. § 120-129(1) (2011).

. In two additional instances the General Assembly has addressed the waiver of the attorney-client privilege more obliquely but nevertheless without ambiguity. In section 7A-450(d) the privilege is waived for indigent persons to the extent that if the “person .. . becomes financially able to secure legal representation and provide other necessary expenses of representation, he must inform the counsel appointed by the court to represent him of that fact.... and counsel must promptly inform the court of that information.” N.C.G.S. § 7A-450(d) (2011). Such information is specifically excluded by the statute from the protection of the privilege. Id. In addition, section 44-50.1(a) mandates that “[if] the person distributing settlement or judgment proceeds [from a personal injury action] is an attorney, the accounting [of disbursements] required by . . . section [44-50.1] is not a breach of the attorney-client privilege.” N.C.G.S. § 44-50.1(a) (2011).