IN THE SUPREME COURT OF NORTH CAROLINA

No. 161A12

FILED 13 JUNE 2013

APPLEWOOD PROPERTIES, LLC and APPLE CREEK EXECUTIVE GOLF CLUB, LLC

v.

NEW SOUTH PROPERTIES, LLC; APPLE CREEK VILLAGE, LLC; HUNTER CONSTRUCTION GROUP, INC.; and URBAN DESIGN PARTNERS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 725 S.E.2d 360 (2012), affirming an order granting partial summary judgment for defendants entered on 16 April 2010 by Judge Jesse B. Caldwell, III in Superior Court, Gaston County. Heard in the Supreme Court on 14 November 2012.

> *Womble Carlyle Sandridge & Rice, LLP, by Raboteau T. Wilder, Jr. and Amanda G. Ray, for plaintiff-appellants.*
>
> *Dean & Gibson, PLLC, by Jeremy S. Foster and Michael G. Gibson, for defendant-appellee Hunter Construction Group, Inc.*
>
> *Roy Cooper, Attorney General, by John F. Maddrey, Solicitor General; James C. Gulick, Senior Deputy Attorney General; Jennie Hauser, Special Deputy Attorney General; and Anita LeVeaux, Assistant Attorney General, for State of North Carolina ex rel. Dee Freeman, Secretary of North Carolina Department of Environment and Natural Resources, Division of Land Resources, amicus curiae.*

JACKSON, Justice.

In this appeal we consider whether an injured person may bring a civil action against a defendant pursuant to the civil relief provision of the Sedimentation

Pollution Control Act of 1973 ("SPCA") when the defendant has received notices of noncompliance, but has not been cited for a violation of a relevant law, rule, order, or erosion and sedimentation control plan. We hold that before an injured person can have standing to bring a civil action pursuant to section 113A-66 of the SPCA, the defendant must have been cited for a *violation* of a law, rule, ordinance, order, or erosion and sedimentation control plan. Accordingly, we modify and affirm the opinion of the Court of Appeals majority.

On 1 September 2005, plaintiff Applewood Properties, LLC sold a parcel of land located adjacent to the Apple Creek Executive Golf Club, LLC to defendants New South Properties, LLC and Apple Creek Village, LLC for development as a residential community. Subsequently, New South hired defendant Urban Design Partners to design erosion control measures, site plans, storm water collection and control systems, and utilities for the project. On 15 September 2005, New South obtained approval of its erosion and sedimentation control plan from the Gaston County Natural Resources Department ("GNRD"). New South then hired defendant Hunter Construction Group, Inc. to prepare the parcel for construction of new homes in accordance with the approved plan. Hunter cleared and graded the parcel and built erosion control structures and devices, including a silt collection basin.

On 28 March 2006, the GNRD inspected the parcel and found that New South had "[f]ail[ed] to [t]ake [a]ll [r]easonable [m]easures" to control erosion and

sedimentation as required by Title 15A, Chapter 04B, Section .0105 of the North Carolina Administrative Code. The GNRD indicated in its report that corrective actions were necessary, including "a revision with an added berm with stone wier to the draw in the center of the property to reduce the concentrated flow to the basin that is it's [sic] outlet." The GNRD sent New South a "Notice of Non-Compliance," which informed New South of its "[f]ailure to take all reasonable measures" and mandated that it take the aforementioned corrective actions by 11 April 2006. New South forwarded the notice to Hunter and instructed the contractor to correct the problems. After inspecting the parcel again on 5 May 2006, the GNRD found that the site was in compliance with the SPCA, but indicated that additional corrective actions were needed, including "[m]ak[ing] sure all basins are cleaned and maintained, per our conversation."

On 27 June 2006, a dam that Hunter had constructed to form the silt collection basin ruptured, causing mud, water, and other debris to flood the golf course. The GNRD inspected the parcel and found that New South had taken "Insufficient Measures to Retain Sediment on Site" in violation of section 113A-57(3) of the North Carolina General Statutes and had "Fail[ed] to Take All Reasonable Measures" to control erosion and sedimentation. The GNRD noted in its report that sediment damage had occurred as a result of "Offsite sediment [being deposited] onto [the] neighboring golf course." The GNRD issued a "Notice of Non-Compliance" to New South, which informed New South of these findings and

mandated that the company take corrective action, including "Restor[ing] adaquate [sic] sediment control measures, to retain sediment on site" by 6 July 2006. New South continued to forward these notices to Hunter.

Representatives from Hunter visited the site to assess the damage, and they told New South's project manager that "they were going to take care of it." Although Hunter initially undertook some cleanup and repair work following the rupture, it ultimately suspended its efforts several weeks later before completing the work. As a result, the silt collection basin repeatedly overflowed in the ensuing months, depositing more mud and silt onto the golf course. The GNRD issued New South another "Notice of Non-Compliance" on 13 July 2006, indicating that the company had "Fail[ed] to submit [a] revised Plan" that showed the "changes to topography and drainage area" that had occurred on the parcel. On 23 August 2006, the GNRD again issued New South a "Notice of Non-Compliance," indicating that the company had failed to: (1) "submit [a] revised Plan"; (2) "provide adequate ground cover"; (3) "take all reasonable measures"; and (4) "maintain erosion control measures." The GNRD also mandated corrective actions, including submission of a revised plan.

New South submitted a revised plan to the GNRD, but on 8 September 2006, the GNRD "disapproved" the plan. Nonetheless, on 25 October 2006, the Gaston County Environmental Review Board "resolved that no further action [wa]s

required on [the] site, provided that vegetation [wa]s established and [the] site [wa]s adequate to retain sediment on site for the purpose of water quality." Meanwhile, the GNRD continued to issue "Notice[s] of Non-Compliance" to New South through March 2009. In addition, on 8 January 2007, the North Carolina Division of Water Quality issued New South a "Notice of Violation" for failing to comply with the "State General Stormwater Permit" that was issued along with its approved erosion and sediment control plan.

As a result of the damage to the golf course, on 4 December 2006, plaintiffs filed an action against New South, Apple Creek Village, and Hunter, asserting claims of negligence, nuisance, trespass, violations of the SPCA, negligence per se, and intentional misconduct and gross negligence. Plaintiffs added Urban Design as a defendant on 17 April 2009. On 3 August 2009, Hunter moved for partial summary judgment on the SPCA claim. Apple Creek Village also moved for partial summary judgment, and New South moved for summary judgment on all claims against it. On 16 April 2010, the trial court granted these defendants' motions for summary judgment on the SPCA claim, but denied the motions as to all other claims.

The remaining claims were heard in the Superior Court, Gaston County beginning on 19 April 2010. At the conclusion of the evidence, the jury found that plaintiffs were damaged by defendants' negligence and concluded that plaintiffs

were entitled to $675,000.00 in damages.  On 10 June 2010, the trial court entered its judgment, awarding plaintiffs $675,000.00 in damages.

On 23 September 2010, plaintiffs appealed the trial court's order granting defendants' motions for summary judgment on the SPCA claim.  Subsequently, plaintiffs filed a motion to withdraw their appeal against all defendants except Hunter.  The Court of Appeals allowed plaintiffs' motion on 1 July 2011.  The Court of Appeals later affirmed the trial court's order in a divided opinion.  *Applewood Props., LLC v. New S. Props., LLC*, ___ N.C. App. ___, 725 S.E.2d 360 (2012).  The majority concluded that the SPCA did not apply because "a 'land-disturbing activity' requires an element of deposition into a body of water" and there was no evidence in this case that sediment had been deposited into a body of water.  *Id.* at ___, 725 S.E.2d at 362.  The dissent disagreed and argued that the relevant statutory provisions indicate that "a 'land-disturbing activity' subject to the provisions of the SPCA is one which '*may* cause or contribute to sedimentation,' rather than one which actually does result in sedimentation."  *Id.* at ___, 725 S.E.2d at 366 (Ervin, J., dissenting) (citation omitted).  Therefore, the dissent concluded that sedimentation "cannot be understood to incorporate a deposition into a body of water requirement."  *Id.* at ___, 725 S.E.2d at 366 (quotation marks omitted).

Plaintiffs appealed to this Court as of right pursuant to section 7A-30(2) of the North Carolina General Statutes.  Without considering the merits of plaintiffs'

appeal, we conclude that plaintiffs lacked standing to bring an SPCA claim against Hunter.

Whether plaintiffs had standing to bring an SPCA claim against Hunter hinges on the proper interpretation of section 113A-66 of the North Carolina General Statutes, which provides injured persons a private cause of action pursuant to the SPCA.  As a result, "[t]his matter presents a question of statutory interpretation, which we review de novo.  The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Dickson v. Rucho*, ___ N.C. ___, ___, 737 S.E.2d 362, 368 (2013) (citations and internal quotation marks omitted).  It is well settled that:

> [W]hen the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment.  In these situations, the history of the legislation may be considered in connection with the object, purpose and language of the statute in order to arrive at its true meaning.  However, [w]hen the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required.

*In re Foreclosure of Vogler Realty, Inc.*, 365 N.C. 389, 392, 722 S.E.2d 459, 462 (2012) (alterations in original) (citations and internal quotation marks omitted).

Subsection 113A-66(a) states in pertinent part:

> (a)  Any person injured by a *violation* of this Article or any ordinance, rule, or order duly adopted by the Secretary or a local government, or by the initiation or

> continuation of a land-disturbing activity for which an erosion and sedimentation control plan is required other than in accordance with the terms, conditions, and provisions of an approved plan, may bring a civil action against the person alleged to be in *violation* (including the State and any local government). The action may seek any of the following:
>
> (1)   Injunctive relief.
> (2)   An order enforcing the law, rule, ordinance, order, or erosion and sedimentation control plan *violated*.
> (3)   Damages caused by the *violation*.

N.C.G.S. § 113A-66(a) (2011) (emphases added). The plain language of subsection 113A-66(a) indicates that the legislature intended to provide injured persons a private cause of action when there has been a *violation* of: (1) the SPCA; (2) a relevant ordinance, rule, or order; or (3) an erosion and sedimentation control plan. The first clause of subsection 113A-66(a) unambiguously states that a private cause of action will lie when there has been a violation of the SPCA or a relevant ordinance, rule, or order. Although the term "violation" does not appear in the second clause of subsection 113A-66(a), the legislature's use of the term "violated" in subdivision 113A-66(a)(2), which also refers to "law, rule, ordinance, [and] order," demonstrates the General Assembly's intent that a *violation* of, rather than mere noncompliance with, an erosion and sedimentation control plan must have occurred to give rise to a private cause of action pursuant to this clause. *See id.* § 113A-66(a)(2). Furthermore, the directive in subsection 113A-66(a) that injured persons "may bring a civil action against the person *alleged to be in violation*" evidences the

legislature's intent that a defendant actually have been cited for a violation before a private cause of action can arise. *See id.* § 113A-66(a) (emphasis added). "We presume that the General Assembly carefully chose each word used in drafting the legislation." *Dickson*, ___ N.C. at ___, 737 S.E.2d at 371 (internal quotation marks omitted). The legislature could have used the word "noncompliance," or another broader term to describe the conduct necessary to trigger a private cause of action, but chose not to do so. Instead, it opted to use the narrow term "violation." As such, we conclude that the legislature intended to create a private cause of action only when the defendant has been cited for a violation pursuant to the SPCA.

This interpretation is consistent with our decision in *Holly Ridge Associates, LLC v. North Carolina Department of Environment & Natural Resources*, in which we recognized that an aggrieved party might be entitled to bring a civil action pursuant to section 113A-66 in a case in which the defendant had been cited for a violation of the SPCA. *See* 361 N.C. 531, 533, 538, 648 S.E.2d 830, 833, 836 (2007) (stating that the defendant previously had received "a Notice of Violations of" the SPCA and had been assessed a civil penalty by the Department of Environment and Natural Resources and observing that the intervening parties' "allegations of injury could be an appropriate basis . . . to file a private claim under the SPCA"). Moreover, this interpretation does not leave an injured person without recourse when the offending party has not been cited for a violation because the injured person alternatively may bring a traditional tort action in nuisance for any damages

caused by the offending party's actions. In fact, in the case *sub judice* plaintiffs did pursue such a successful claim. Therefore, we hold that for an injured person to have standing to bring a civil action against a defendant pursuant to section 113A-66, the defendant previously must have been cited for a *violation* of a law, rule, ordinance, order, or erosion and sedimentation control plan as described by this section. Were we to hold otherwise, a defendant could be subject to civil liability pursuant to the SPCA even if its actions had not risen to the level of a violation.[1] The legislature certainly did not intend such an absurd result, especially in cases such as this in which the enforcing agency has given the offending party an allotted time period in which to take corrective actions before being subjected to any penalties pursuant to the SPCA. *See Nationwide Mut. Ins. Co. v. Mabe*, 342 N.C. 482, 494, 467 S.E.2d 34, 41 (1996) ("[T]h[is] Court will, whenever possible, interpret a statute so as to avoid absurd consequences." (quotation marks omitted)).

In the case *sub judice* it is apparent that the GNRD issued New South numerous "Notice[s] of Non-Compliance" during the eight months leading up to the filing of plaintiffs' SPCA claim. These notices were sent to New South, but not Hunter, and informed the recipient of numerous violations of relevant ordinances, statutes, and administrative code provisions and recommended appropriate corrective actions. Although the GNRD repeatedly warned New South about these

---

[1] In the instant case, this holding is even more compelling because the notices of noncompliance were issued to New South, rather than Hunter. As such, Hunter never was directly put on notice that it potentially could be held responsible for any of the violations.

violations, neither New South nor Hunter ever was issued a "Notice of Violation" before plaintiffs initially brought their SPCA claim.[2]  Instead, the GNRD repeatedly informed New South that it would have the opportunity to take corrective actions within a specified time period before being subject to any penalties pursuant to the SPCA.  Although it is notable that none of these "Notice[s] of Non-Compliance" were directed at Hunter, that fact is immaterial in the case before us.  Because Hunter never was cited for a violation, we must conclude that plaintiffs lacked standing to bring a civil action against Hunter pursuant to section 113A-66.  Therefore, the trial court properly granted defendants' motions for summary judgment on plaintiffs' SPCA claim against Hunter.  Accordingly, we modify and affirm the opinion of the Court of Appeals majority.

MODIFIED AND AFFIRMED

Justice BEASLEY did not participate in the consideration or decision of this case.

---

[2]  As we have noted, the record indicates that the Division of Water Quality issued New South a "Notice of Violation" for failing to comply with the "State General Stormwater Permit" on 8 January 2007, nearly one month after plaintiffs brought their SPCA claim on 4 December 2006.  Since this notice was issued after plaintiffs filed their original complaint, it could not have conferred standing on plaintiffs to bring their SPCA claim on 4 December 2006.  However, we also note that the record indicates that plaintiffs filed an amended complaint on 17 April 2009, well after New South was issued the "Notice of Violation." Nevertheless, we need not decide the effect of plaintiffs' amended complaint because the "Notice of Violation" was issued to New South, and we are concerned only with plaintiffs' standing to sue Hunter in the case *sub judice.*

Justice EDMUNDS dissenting.

I believe the majority opinion incorrectly restricts the reach of N.C.G.S. § 113A-66(a) by giving State and local agencies gatekeeping powers nowhere found or implied in Chapter 113A. Under the majority's interpretation, a plaintiff may not seek redress against a party under this statute unless a violation notice has been issued to that party. In other words, a plaintiff must wait and see whether a governmental body such as the GNRD or the North Carolina Division of Water Quality will exercise its unbridled discretion to issue a violation notice before that plaintiff can bring a civil action under section 113A-66. Applying that reasoning here, the majority concludes that, because the GNRD chose for whatever reason not to issue a notice of violation to defendant Hunter, plaintiff has no recourse and simply has to write off section 113A-66 as a source of relief. I find problematic the majority's holding that the statute is triggered not by a plaintiff's injury but by an administrative decision whether to issue a violation notice. Allowing an injured plaintiff to seek redress is not an "absurd result" as the majority states; rather, it is precisely what the statute allows.

In its analysis, the majority misreads subsection 113A-66(a). That statute creates two bases for a claim. The first applies when a plaintiff is "injured by a violation of this Article or any ordinance, rule, or order duly adopted by the Secretary or a local government." N.C.G.S. § 113A-66(a) (2011). The second applies

when a plaintiff is injured "by the initiation or continuation of a land-disturbing activity for which an erosion and sedimentation control plan is required other than in accordance with the terms, conditions, and provisions of an approved plan." *Id.* Under either circumstance, an injured plaintiff may bring suit using subsection 113A-66(a) "against the person alleged to be in violation." *Id.* The statute as written does not require plaintiff to await action by the GNRD or by anyone else. Here, relying on the second basis, the injured plaintiff brought suit against a defendant alleged to be "engaged in land-disturbing activity . . . without installing erosion and sedimentation control devices" and "without filing or complying with erosion and sedimentation control plans with the governing agency." This allegation is sufficient to confer standing.

The gatekeeping function created today serves to limit the remedies available to an injured plaintiff. *Holly Ridge Associates, LLC v. North Carolina Department of Environment & Natural Resources*, 361 N.C. 531, 648 S.E.2d 830 (2007), cited by the majority, is not to the contrary. In *Holly Ridge*, the defendant had already been issued Notices of Violations and assessed several civil penalties by the time suit was brought under the Sedimentation Pollution Control Act. *Id.* at 533-34, 648 S.E.2d at 833. Consequently, *Holly Ridge* gives little guidance in the case at bar.

Because I believe that subsection 113A-66(a) gives plaintiff standing, I respectfully dissent from the majority holding.

Justice HUDSON joins in this dissenting opinion.