IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1077

Filed: 3 November 2020

Iredell County No. 17 CVS 1631

MASON MITCHELL d/b/a MASON MITCHELL MOTORSPORTS, and MASON MITCHELL MOTORSPORTS, INC., Plaintiffs,

v.

SCOTT BOSWELL, Defendant.

Appeal by Plaintiffs from Order entered 9 September 2019 by Judge Jesse B. Caldwell, III in Iredell County Superior Court. Heard in the Court of Appeals 14 April 2020.

> *Hartsell & Williams, P.A., by Andrew T. Cornelius, Austin "Dutch" Entwistle, III, and E. Garrison White, for plaintiffs-appellees.*
>
> *Stam Law Firm, PLLC, by R. Daniel Gibson, for defendant-appellant.*

MURPHY, Judge.

Motions to enforce settlement agreements are treated like motions for summary judgment and should be granted only when there are no genuine issues of material fact and the movant is entitled to relief as a matter of law. The statute of frauds may preclude such relief as a matter of law. Where a statute's terms are unambiguous, we consider their plain meaning. Here, the applicable statute of frauds by its plain terms requires the parties, not their attorneys, to sign a mediated settlement agreement. The failure of the parties to sign the mediated settlement

agreement renders it unenforceable as a matter of law. The motion to enforce the mediated settlement agreement should have been denied. We reverse.

## **BACKGROUND**

Defendant, Scott Boswell ("Boswell"), and Plaintiffs, Mason Mitchell ("Mitchell") and Mason Mitchell Motorsports, Inc., were ordered by the Superior Court to participate in a mediated settlement conference, which took place on 29 April 2019. At the mediated settlement conference, the parties created a memorandum that seemingly described the terms under which the parties would settle the case ("memorandum of settlement"). Both parties were out of state at the time of the mediation, so the mediation was conducted with the attorneys and mediator present while the parties were available by telephone. The parties did not sign the memorandum of settlement themselves; however, the attorneys purportedly signed on the parties' behalf. The memorandum of settlement is shown in relevant part below:

STATE OF NORTH CAROLINA

IREDELL COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17CVS1631

MASON MITCHELL d/b/a MASON )
MITCHELL MOTORSPORTS & )
MASON MITCHELL MOTORSPORTS, Inc.)
     Plaintiff )
vs. )
)
SCOTT BOSWELL )
    Defendant. )

<u>Memorandum</u>

        Both parties mutually and voluntarily to dismiss all claims with prejudice under the above mentioned case number pursuant the following terms:

1. For Scott Boswell to pay the full amount of $45,000.00 in certified funds to Hartsell & Williams Trust account within 30 days of execution of the settlement agreement which will be drafted by attorneys Andrew Cornelius and Marisa Thompson within 30 days of this dated memorandum.

2. For MMM to allow for Scott Boswell and/or agent to pick up his race car and two race seats within 45 days of the execution of the settlement agreement.

        This is only a memorandum and a settlement agreement with more details will be drafted.

This ___ day of April, 2019

_____
Retired Judge Preston Cornelius

_____
Andrew Cornelius o/b/o MMM

_____
Marisa Thompson o/b/o Scott Boswell

Following the creation of the memorandum of settlement, Boswell's attorney drafted a proposed settlement agreement pursuant to the terms of the memorandum of settlement and sent it to Mitchell's attorney. This document was eventually signed

by Mitchell; however, Boswell did not sign the settlement agreement. In a letter via email, Mitchell demanded Boswell execute the settlement agreement as Mitchell contended the parties had agreed to do in the memorandum of settlement. When this did not occur, Mitchell filed a motion to enforce the memorandum of settlement.

After the filing of this motion, competing affidavits from the mediator and Boswell were filed. The affidavit from the mediator stated in relevant part:

> Both parties were present via telephone conference because both parties reside out of state. . . . [T]he mediation resulted in a settlement that resolved all issues memorialized by a memorandum of settlement signed by myself, [and the parties' attorneys on behalf of their clients]. . . . That I was present when [Boswell] authorized [his counsel] to sign the memorandum of judgment on his behalf due to his lack of physical presence.

Boswell's affidavit stated in relevant part:

> I did not review any settlement documentation requiring my signature or my attorney's signature as part of the 29 April 2019 mediation. . . . I did not sign or authorize anyone to sign on my behalf any settlement documentation as part of the 29 April 2019 mediation. . . . I was not aware of any settlement documentation signed as part of the 29 April 2019 mediation until 4 June 2019. On 4 June 2019, I reviewed a letter from [Mitchell's] counsel to [my attorney] dated 3 June 2019 which attached a document that [my attorney] purportedly signed on my behalf. . . . [My attorney at the time] did not and does not have my authorization to sign the document attached to the 3 June 2019 letter.

At the hearing on this motion, Boswell contended the motion to enforce the memorandum of settlement should be denied, in part due to the failure to satisfy the

statute of frauds.[1]   The trial court granted Mitchell's motion to enforce the memorandum of settlement and found the "Memorandum of Settlement is a binding contract between the parties which contains the material terms of that agreement, and that counsel for the parties had the authority at mediation to execute the Memorandum of Settlement on behalf of the parties."   Boswell timely appeals the trial court's order enforcing the memorandum of settlement.

## ANALYSIS

A motion to enforce a memorandum of settlement is treated as a motion for summary judgment.  *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009).  "The standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007).

> On appeal of a trial court's allowance of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law.   Evidence presented by the parties is viewed in the light most favorable to the non-movant.'

*Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (quoting *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)).   Our General Assembly

---

[1] Although no transcript was filed in the Record, during oral argument Mitchell conceded this argument was presented below.  *See State v. Williams*, 247 N.C. App. 239, 244 n.3, 784 S.E.2d 232, 235 n.3 (2016) (citing *State v. Stroud*, 147 N.C. App. 549, 564, 557 S.E.2d 544, 553 (2001)).  Thus, this argument is preserved for our review.  N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

determines which contracts must be in writing and by whom they must be signed in order to be enforceable.

Whether Mitchell was entitled to enforcement of the memorandum of settlement as a matter of law turns on whether Boswell's failure to sign the memorandum of settlement made it unenforceable against him under the statute of frauds.[2] The controlling statute of frauds for settlement agreements resulting from mediated settlement conferences is N.C.G.S. § 7A-38.1(l). N.C.G.S. § 7A-38.1(l) provides:

> No settlement agreement to resolve any or all issues reached at the proceeding conducted under this subsection or during its recesses shall be enforceable unless it has been reduced to writing and signed by the parties against whom enforcement is sought.

N.C.G.S. § 7A-38.1(l) (2019). The order that required the parties to complete a mediated settlement conference was based on N.C.G.S. § 7A-38.1, as it explicitly cited this statute. *See* N.C.G.S. § 7A-38.1(a) (2019) ("this section is enacted to require parties to [S]uperior [C]ourt civil actions and their representatives to attend a pretrial, mediated settlement conference conducted pursuant to this section and

---

[2] Boswell argues genuine issues of material fact existed due to conflicting affidavits and ambiguous language regarding the parties' intent in the memorandum of settlement, and argues the memorandum of settlement is an agreement to agree, not a settlement agreement, that is unenforceable as a matter of law. We do not address these arguments and express no opinion as to them because the statute of frauds issue is determinative of this appeal. *See Rogerson v. Fitzpatrick*, 170 N.C. App. 387, 392, 612 S.E.2d 390, 393 (2005).

pursuant to rules of the Supreme Court adopted to implement this section"). Thus, N.C.G.S. § 7A-38.1(l) is controlling here. Furthermore, the memorandum of settlement is such a settlement agreement subject to N.C.G.S. § 7A-38.1(l). By its terms, the memorandum of settlement is an agreement[3] "to dismiss all claims with prejudice," resolving the case, which the trial court enforced against Boswell.

Mitchell contends N.C.G.S. § 7A-38.1(l) should be read to "allow[] for authorized persons to enter into settlement agreements on behalf of a non-attending party at [a mediated settlement conference]." Mitchell relies on Mediated Settlement Conference Rule 4(A)(2)(a), which at the time permitted a party to participate without physical attendance, in conjunction with the lack of "a procedure for how a non-attending party . . . is to sign the agreement which has been reduced to writing in the event that a settlement is reached." *See* Revised Rules Implementing Statewide Mediated Settlement Conferences and Other Settlement Procedures in Superior Court Civil Actions, 367 N.C. 1020 (2014).

We disagree. As Mitchell acknowledges, the meaning of N.C.G.S. § 7A-38.1(l) is an issue of statutory interpretation. In addressing these questions, our Supreme Court has stated:

---

[3] We note that we are assuming, without deciding, the memorandum of settlement is an agreement. As alluded to, Boswell contends it was not an agreement; however, it makes no difference to the outcome here. If the memorandum of settlement was not an agreement, then it was not enforceable against Boswell. If the memorandum of settlement was an agreement, then the statute of frauds prevents it from being enforceable against Boswell.

> Questions of statutory interpretation are ultimately questions of law for the courts and are reviewed de novo. The principal goal of statutory construction is to accomplish the legislative intent. The best indicia of that intent are the language of the statute, the spirit of the act and what the act seeks to accomplish. The process of construing a statutory provision must begin with an examination of the relevant statutory language. It is well settled that where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning. In other words, if the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning.

*Wilkie v. City of Boiling Spring Lakes*, 370 N.C. 540, 547, 809 S.E.2d 853, 858 (2018) (internal quotations marks, alterations, and citations omitted). "An unambiguous word has a 'definite and well known sense in the law.'" *Fid. Bank v. N.C. Dep't of Revenue*, 370 N.C. 10, 19, 803 S.E.2d 142, 148-149 (2017) (quoting *C.T.H. Corp. v. Maxwell*, 212 N.C. 803, 810, 195 S.E. 36, 40 (1938)). "[L]anguage in a statute is unambiguous when it 'express[es] a single, definite and sensible meaning[.]'" *Id.* at 19, 803 S.E.2d at 149 (quoting *State Highway Comm'n v. Hemphill*, 269 N.C. 535, 539, 153 S.E.2d 22, 26 (1967)). "In the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute." *Dickson v. Rucho*, 366 N.C. 332, 342, 737 S.E.2d 362, 370 (2013) (quoting *Perkins v. Ark. Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000)).

Here, the language at issue is "signed by *the parties* against whom enforcement is sought." N.C.G.S. § 7A-38.1(l) (emphasis added). There is no definition of "party" within the statute. Black's Law Dictionary defines a "party" as:

> 1. Someone who takes part in a transaction <a party to the contract>. . . .
>
> 2. One by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment; LITIGANT <a party to the lawsuit>. • For purposes of res judicata, a party to a lawsuit is a person who has been named as a party and has a right to control the lawsuit either personally, or, if not fully competent, through someone appointed to protect the person's interests. In law, all nonparties are known as "strangers" to the lawsuit.

*Party*, Black's Law Dictionary (11th ed. 2019). In the full definition, there is no reference to "party" including an attorney. Thus, according to its "definite and well known sense in the law," "party" does not include an attorney. *Fid. Bank*, 370 N.C. at 19, 803 S.E.2d at 148-149. "Furthermore, this Court cannot 'delete words used or insert words not used' in a statute." *State ex rel. Util. Comm'n v. N.C. Sustainable Energy Ass'n*, 254 N.C. App. 761, 764, 803 S.E.2d 430, 433 (2017) (quoting *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014)). If we were to read "the parties" in N.C.G.S. § 7A-38.1(l) to include the parties' attorneys, then we would be inserting language into the statute in contravention of this principle.

The language in N.C.G.S. § 7A-38.1(l) requires the people "who take[] part in a transaction," or the "[o]ne by or against whom a lawsuit is brought" to sign any

settlement agreement reached as the result of a mediated settlement conference in order for it to be enforced against them under N.C.G.S. § 7A-38.1. *See Party*, Black's Law Dictionary (11th ed. 2019). Here, Boswell was the party against whom enforcement was sought, not his attorney. The failure of Boswell to sign the memorandum of settlement renders it unenforceable against him as a matter of law.[4] N.C.G.S. § 7A-38.1(l) (2019). As a result, the trial court erred in granting the motion to enforce the memorandum of settlement.[5]

Even assuming, *arguendo*, N.C.G.S. § 7A-38.1(l) was ambiguous, requiring statutory interpretation, we would still come to the same result—that N.C.G.S. § 7A-38.1(l) does not permit authorized agents to sign on behalf of a party. In adopting the language of N.C.G.S. § 7A-38.1(l), the General Assembly unambiguously omitted the authority to sign by authorized agent as it has included in other statute of frauds contexts. *See* N.C.G.S. § 22-1 (2019) ("signed by the party charged therewith or some other person thereunto by him lawfully authorized"); N.C.G.S. § 22-2 (2019) ("signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized"); N.C.G.S. § 25-2-201(1) (2019) ("signed by the party against whom

---

[4] We recognize the increased use of virtual and telephonic attendance at settlement conferences. Without deciding the issue today, we observe the current availability of the provisions of the Uniform Electronic Transactions Act. N.C.G.S. § 66-311 *et seq.*

[5] We have held "[t]he statute of frauds was designed to guard against fraudulent claims supported by perjured testimony; it was not meant to be used by defendants to evade an obligation based on a contract fairly and admittedly made." *House v. Stokes*, 66 N.C. App. 636, 641, 311 S.E.2d 671, 675 (1984). Such a holding does not apply here, where Boswell has not admitted entering into the memorandum of settlement below or on appeal, and instead contends he did not enter into the contract.

enforcement is sought or by his authorized agent or broker"). "[I]t is always presumed that the [General Assembly] acted with full knowledge of prior and existing law." *See Dickson*, 366 N.C. at 341, 737 S.E.2d at 369, (quoting *Ridge Cmty. Investors, Inc. v. Berry*, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977)). We presume the General Assembly was fully aware of the inclusion of authorized agents in other statutes of frauds, and the absence of authorized agents in this statute therefore reflects the General Assembly's decision to specifically require the parties' signatures to satisfy N.C.G.S. § 7A-38.1(l). This interpretation is also supported by the separate treatment of parties and attorneys in other subsections of N.C.G.S. § 7A-38.1. *See* N.C.G.S. §§ 7A-38.1(b)(1) (2019) ("the parties to a civil action and their representatives"); 7A-38.1(f) ("The parties to a [S]uperior [C]ourt civil action in which a mediated settlement conference is ordered, their attorneys and other persons or entities with authority"). The references to non-parties with authority to sign and bind a party, both within N.C.G.S. § 7A-38.1 and outside of it, demonstrate the intentional decision on the part of the General Assembly to require the signature of the *parties* themselves to satisfy the statute of frauds. *Id.* at 342, 737 S.E.2d at 370 ("This definition suggests that the General Assembly's use of the word "provision" was meant to refer only to other statutory clauses and not to common law doctrines such as the attorney-client privilege and work-product doctrine. . . . This interpretation is bolstered by the fact

- 11 -

that the General Assembly repeatedly has demonstrated that it knows how to be explicit when it intends to repeal or amend the common law.").

## **CONCLUSION**

The trial court erroneously granted Mitchell's motion to enforce the memorandum of settlement when the memorandum of settlement did not satisfy the statute of frauds promulgated by our General Assembly in N.C.G.S. § 7A-38.1(l). Mitchell was not entitled to enforcement of the settlement agreement as a matter of law and we reverse the trial court's order to the contrary.

REVERSED.

Chief Judge MCGEE and Judge BROOK concur.