**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 15-1001**

───────────

KENT STAHLE,

             Plaintiff - Appellant,

     v.

CTS CORPORATION,

             Defendant – Appellee.

-------------------

NORTH CAROLINA ADVOCATES FOR JUSTICE,

             Amicus Supporting Appellant.

───────────

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Max O. Cogburn, Jr., District Judge. (1:14-cv-00048-MOC-DLH)

───────────

Argued: September 17, 2015         Decided: March 2, 2016

───────────

Before WYNN, FLOYD, and THACKER, Circuit Judges.

───────────

Reversed and remanded by published opinion. Judge Floyd wrote the opinion in which Judge Wynn joined. Judge Thacker wrote an opinion concurring in the judgment.

───────────

**ARGUED**: Kaitlin Price, Mackenzie Salenger, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant. Earl Thomison Holman, ADAMS HENDON CARSON CROW & SAENGER, P.A., Asheville, North Carolina, for Appellee. **ON BRIEF:** John J. Korzen,

Director, Zachary K. Dunn, Third-Year Law Student, Davis T. Phillips, Third-Year Law Student, Appellate Advocacy Clinic, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant. Michael W. Patrick, LAW OFFICE OF MICHAEL W. PATRICK, Chapel Hill, North Carolina; Cathy A. Williams, WALLACE & GRAHAM, PA, Salisbury, North Carolina, for Amicus Curiae.

_____

FLOYD, Circuit Judge:

At issue in this appeal is the scope of North Carolina General Statutes Section 1-52(16), which at the relevant time provided:

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

The Supreme Court of North Carolina has explained that this statute "establishes what is commonly referred to as the discovery rule, which tolls the running of the statute of limitations for torts resulting in certain latent injuries," although "such actions remain subject to the [10-year] statute of repose provision." Misenheimer v. Burris, 637 S.E.2d 173, 175-76 (N.C. 2006).

Appellant Kent Stahle was diagnosed with leukemia. He subsequently brought a complaint against Appellee CTS Corporation (CTS). Stahle alleges that CTS was responsible for dumping toxic solvents from an Asheville-area manufacturing plant into a local stream, and that childhood exposure to the contaminated stream water many years ago caused his leukemia. The district court dismissed Stahle's complaint, holding that the statute of repose in Section 1-52(16) barred his action.

We disagree. The Supreme Court of North Carolina has not yet directly resolved whether Section 1-52(16) applies to disease claims. As a federal court sitting in diversity faced with an unresolved question of state law, we must predict how the question would be decided by that state's highest court. Because we understand that under North Carolina law a disease is not a "latent injury," we conclude that the Supreme Court of North Carolina would not find Section 1-52(16) applicable to Stahle's claim. Accordingly, we reverse and remand the case to the district court for further proceedings.

I.

CTS is a Delaware corporation that was licensed to do business in North Carolina. CTS purportedly owned CTS of Asheville, Inc. (CTS of Asheville), a now-dissolved North Carolina corporation. From 1959 to 1983, CTS of Asheville operated a manufacturing facility in Buncombe County, North Carolina. As part of its manufacturing operations, CTS of Asheville used various toxic solvents, including trichloroethylene. CTS of Asheville allegedly dumped large quantities of these toxic contaminants onto its property and into a stream known as Dingle Creek.

From 1959 until 1968, Stahle lived with his family on a property on Dingle Creek, downstream of CTS of Asheville's manufacturing plant. During this period, Stahle was exposed to

4

the contaminated water of Dingle Creek. Many years later, Stahle was diagnosed with Chronic Myelogenous Leukemia.

On February 20, 2014, Stahle filed a one-count complaint against CTS in the Western District of North Carolina. Stahle alleges that CTS of Asheville's negligence in dumping toxic chemicals into Dingle Creek caused his leukemia. CTS moved to dismiss Stahle's complaint, principally on the basis that it was time-barred under North Carolina General Statutes Section 1-52(16), the second sentence of which provides that "no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." CTS argued that the last possible relevant "act or omission of the defendant" occurred in 1968 when Stahle moved away from Dingle Creek; as such, the statute applied to bar any action by Stahle not brought by 1978. Stahle responded that precedent of the Supreme Court of North Carolina and decisions of this Circuit established that statutes such as Section 1-52(16) do not apply to claims arising from disease.

The magistrate judge recommended that CTS's motion to dismiss be granted. The magistrate judge found that the statutory text of Section 1-52(16) was unambiguous and did not contain an exception for diseases. The district court agreed with the recommendation and dismissed Stahle's action with prejudice. Stahle timely appealed.

5

We review a district court's grant of a motion to dismiss de novo. Johnson v. Am. Towers, LLC, 781 F.3d 693, 706 (4th Cir. 2015). This appeal presents a question of statutory interpretation, which we also review de novo. Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 512 (4th Cir. 1999).

Because federal jurisdiction in this matter rests in diversity,[1] our role is to apply the governing state law. See BP Prods. N. Am., Inc. v. Stanley, 669 F.3d 184, 188 (4th Cir. 2012). "It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest

---

[1] Although not raised at any time in the district court, on appeal we noted a possible defect in subject matter jurisdiction. The ostensible parties were completely diverse in apparent satisfaction of 28 U.S.C. § 1332(a). However, the conduct alleged in Stahle's complaint focused not on Defendant-Appellee CTS, but on the long-ago-dissolved CTS of Asheville, who, like Stahle, was a North Carolina citizen. North Carolina law permits claims against a dissolved corporation that were unknown at dissolution to be brought against the dissolved corporation's shareholder(s). See N.C. Gen. Stat. §§ 55-14-07 to -08. Although perhaps implicit in Stahle's pleadings, the complaint lacked an explicit technical relational allegation concerning CTS's ownership of the former CTS of Asheville. Following supplemental briefing by the parties, we are satisfied that we have subject matter jurisdiction in this case, and under 28 U.S.C. § 1653, deem Stahle's complaint amended as proposed in his supplemental brief. See Trans Energy, Inc. v. EQT Prod. Co., 743 F.3d 895, 901 (4th Cir. 2014) ("[Section 1653] allows for the curing of jurisdictional pleading defects on appeal."). We express no view on the merits of Stahle's amended pleading.

court, giving appropriate effect to all its implications." Assicurazioni Generali, S.p.A. v. Neil, 160 F.3d 997, 1002 (4th Cir. 1998). If, as here, the state's highest court has not directly addressed the issue, a federal court "must anticipate how it would rule." Liberty Univ., Inc. v. Citizens Ins. Co. of Am., 792 F.3d 520, 528 (4th Cir. 2015).[2] In other words, our task here is to anticipate whether the Supreme Court of North Carolina would rule that North Carolina General Statutes Section 1-52(16) bars Stahle's action.

III.

A.

This is not the first time we have anticipated North Carolina law on the subject of disease claims and personal injury statutes of repose. In Hyer v. Pittsburgh Corning Corp. we articulated our understanding that "the [North Carolina] Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it." 790 F.2d 30, 34 (4th Cir. 1986) (quotation omitted). Hyer is still the law in this Circuit, and

---

[2] A lack of controlling precedent on a state rule of decision might merit certification of the issue to that state's highest court. However, North Carolina has no certification procedure in place for federal courts to certify questions to its courts. See AGI Assocs., LLC v. City of Hickory, N.C., 773 F.3d 576, 579 n.4 (4th Cir. 2014).

7

we are bound to follow it here.  E.g., <u>Demetres v. E. W. Constr.,</u> <u>Inc.</u>, 776 F.3d 271, 275 (4th Cir. 2015); <u>United States v. Collins</u>, 415 F.3d 304, 311 (4th Cir. 2005) ("A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." (quoting <u>Etheridge v. Norfolk & W. Ry. Co.</u>, 9 F.3d 1087, 1090 (4th Cir. 1993))).

Section 1-52(16) functions as a statute of repose directed at certain personal injury claims.  The North Carolina General Assembly has not expressly expanded the language to include disease.  Therefore, under our understanding of North Carolina law as articulated in <u>Hyer</u>, we conclude that the Supreme Court of North Carolina would not consider Section 1-52(16) applicable to claims arising out of disease.

B.

CTS argues that <u>Hyer</u> is distinguishable because it analyzed a different statute of repose.  As stated above, the conclusion announced in <u>Hyer</u> is broad enough to encompass the statute at issue here.  However, even assuming our articulation of North Carolina law in <u>Hyer</u> was broader than necessary to resolve that case—such that it should be considered non-binding dicta—we nevertheless

8

conclude that applying the underlying reasoning in Hyer leads to the same result here.

In Hyer, we considered the scope of the statute of repose in North Carolina General Statutes Section 1-50(6). Section 1-50(6) was enacted in 1979 as part of "An Act Relating to Civil Actions for Damages for Personal Injury, Death or Damage to Property Resulting From the Use of Products." See 1979 N.C. Sess. Laws 689 (Products Liability Act). At that time, Section 1-50(6) provided:

> No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

Hyer, 790 F.2d at 32. The plaintiff in Hyer was diagnosed with a disease, asbestosis, in 1981, and alleged in an action brought the same year that his disease had been caused by asbestos-related products manufactured by the defendant. Id. at 31-32. In response, the defendant presented evidence that it had sold its last product containing asbestos in 1972, meaning that nine years had passed before the action was brought. Id. at 32. The district court ruled that the action was time-barred by the six-year limit in Section 1-50(6).

We reversed, principally relying on the Supreme Court of North Carolina's intervening decision in Wilder v. Amatex Corp., 336 S.E.2d 66 (N.C. 1985). Hyer, 790 F.2d at 32. As we explained in Hyer, Wilder also involved a disease claim, and the Wilder court

9

faced the question of whether yet another statute of repose, the then-operative North Carolina General Statutes Section 1-15(b), "applie[d] to claims arising out of disease." 790 F.2d at 33 (quoting Wilder, 336 S.E.2d at 68-69). That statute provided:

> Except where otherwise provided by statute, a cause of action, other than one for wrongful death or one for malpractice arising out of the performance or failure to perform professional services, having as an essential element bodily injury to the person or a defect or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that in such cases the period shall not exceed ten years from the last act of the defendant giving rise to the claim for relief.

Hyer, 790 F.2d at 32-33. After reviewing the Supreme Court of North Carolina's analysis of Section 1-15(b), we noted its "conclusion that 'the legislature intended [Section 1-15(b)] to have no application to claims arising from disease.'" Hyer, 790 F.2d at 33 (quoting Wilder, 336 S.E.2d at 73). We highlighted the Supreme Court's finding that the statute's "primary purpose was to change the accrual date from which the period of limitations begins to run on latent injury claims" and to add "a ten-year statute of repose . . . to latent injury claims." Hyer, 790 F.2d at 33 (quoting Wilder, 336 S.E.2d at 69). We quoted Wilder's statement that unlike latent injury claims, "disease presents an intrinsically different kind of claim" and noted our understanding

10

that "North Carolina has always recognized" the distinction. Hyer, 790 F.2d at 33 (quoting Wilder, 336 S.E.2d at 70).[3]

With this understanding of Wilder, we returned to our analysis of the statute of repose in Section 1-50(6). We noted our cognizance "that Wilder concerned § 1-15(b) while we construe § 1-50(6)" but found that "the implications of Wilder with respect to the construction to be placed on § 1-50(6)" were plain. Hyer, 790 F.2d at 33-34. We concluded that "[Wilder] makes it plain . . . that the [North Carolina] Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it." Id. at 34 (quotation omitted). We

_____

[3] Hyer also quoted extensively from the Wilder court's explanation of why disease is "intrinsically different" than latent injury claims:

> Diseases such as asbestosis, silicosis, and chronic obstructive lung disease normally develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents. It is impossible to identify any particular exposure as the "first injury." Indeed, one or even multiple exposures to an offending substance in these kinds of diseases may not constitute an injury. The first *identifiable* injury occurs when the disease is diagnosed as such, and at that time it is no longer latent.

790 F.2d at 33 (quoting 336 S.E.2d at 70). It is natural to think of disease as having a latency period and latency is a concept common to non-legal discussions of disease. This common association between the concepts of disease and latency may explain why Wilder provided (and Hyer quoted) such an extended discussion of why, in a legal sense, disease is not a "latent injury."

11

predicted that the Supreme Court of North Carolina would conclude that Section 1-50(6) did not bar disease claims.  Id.

We have repeatedly affirmed our understanding of North Carolina law as articulated in Hyer.  For example, in Bullard v. Dalkon Shield Claimants Trust, we held that the principles stated in Wilder were not limited only to "occupational" diseases.  74 F.3d 531, 534 (4th Cir. 1996); see also id. at 534 n.6 (citing cases applying Hyer).  We noted that we understood the Supreme Court of North Carolina's decision in Wilder to be based not on the specific characteristics of a particular disease, but on characteristics of disease as a general phenomenon.  See id. at 535.  We further noted in Bullard that "[t]he Wilder court recognized that '[b]oth the [North Carolina Supreme] Court and the [North Carolina] legislature have long been cognizant of the difference between diseases on the one hand and other kinds of injury on the other from the standpoint of identifying legally relevant time periods.'"  74 F.3d at 534 (second alteration in original) (quoting Wilder, 336 S.E.2d at 71).

Returning to the case at bar, we are cognizant that Hyer and Bullard concerned Section 1-50(6) while we now construe Section 1-52(16).  However, we see no meaningful distinction between Section 1-50(6) and Section 1-52(16) such that the principles in Wilder would extend to the former but not to the latter.  CTS suggests that Section 1-50(6) contains ambiguity not

12

present in Section 1-52(16), and that only such ambiguity made application of Wilder appropriate in Hyer. But CTS does not identify the pertinent ambiguity in Section 1-50(6), or what about Section 1-52(16) eliminates ambiguity. The operative language in each provision is quite similar (emphasis added):

> Section 1-50(6): No action for the recovery of damages for personal injury . . . based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

> Section 1-52(16): [F]or personal injury . . . the cause of action . . . shall not accrue until bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent . . . [p]rovided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant . . . .

Indeed, to the extent the bare language of each provision differs, we think Section 1-52(16) admits of at least as much ambiguity, if not more.

Additionally, the common ancestry of these statutes of repose reinforces the applicability of Hyer here. Both Section 1-50(6) and Section 1-52(16) were enacted in the 1979 Products Liability Act. See 1979 N.C. Sess. Laws 689. This same Act also repealed the predecessor statute of repose at issue in Wilder, Section 1-15(b). Id.

CTS argues that the language of the parent statute in Wilder was sufficiently different such that Wilder should not extend to the daughter statute at issue here, Section 1-52(16). We concluded

13

in <u>Hyer</u>, however, that <u>Wilder</u> extended to the other daughter statute, Section 1-50(6).  The linguistic differences CTS points to here between parent and daughter were also present in <u>Hyer</u>, and we do not see a meaningful difference between the two daughter statutes that would undermine a straightforward application of <u>Hyer</u>.  In fact, of the two sister statutes, Section 1-52(16) is more closely linked to the parent statute (the "heir apparent" perhaps).  <u>Cf.</u>, <u>e.g.</u>, <u>Pembee Mfg. Corp. v. Cape Fear Const. Co., Inc.</u>, 329 S.E.2d 350, 353-54 (N.C. 1985) (describing the similar provision and effect of Section 1-15(b) and Section 1-52(16)).  If the <u>Wilder</u> rule extends to Section 1-50(6), as we concluded it did in <u>Hyer</u>, we conclude it also extends to Section 1-52(16).

Finally, we take a small measure of comfort in the fact that although <u>Hyer</u> and <u>Bullard</u> have been on the books and applied for several decades, neither the North Carolina General Assembly nor the North Carolina courts have taken exception to our expressed understanding of North Carolina law or the implications of the <u>Wilder</u> decision.  The Supreme Court of North Carolina has recognized that the legislature's decision not to amend a statute that has been interpreted by a court is some evidence that the legislature approves of that interpretation.  <u>See, e.g.</u>, <u>State v. Ellison</u>, 738 S.E.2d 161, 164 (N.C. 2013) (citing cases).  The Supreme Court of North Carolina also "always presume[s] that the Legislature acted with full knowledge of prior and existing law."

14

Dickson v. Rucho, 737 S.E.2d 362, 369 (N.C. 2013) (quotation omitted). Amicus North Carolina Advocates for Justice informs us that the General Assembly has acted at least eight times since Wilder to amend various statutes of repose and limitations without undoing any judicial application of the law relating to claims arising from disease. See Br. Amicus Curiae North Carolina Advocates for Justice 4.

Of particular note, in 2009 the General Assembly specifically repealed Section 1-50(6), the statute of repose interpreted in Hyer and Bullard, and enacted Section 1-46.1 in its place. See 2009 N.C. Sess. Laws 420. However, the only textual change to the new product liability action statute was to replace "six years" with "12 years." Id. Moreover, the enacting law further provided that "[n]othing in this act is intended to change existing law relating to product liability actions based upon disease." Id. Though certainly not dispositive, we think the General Assembly's consideration and reenactment of the language of Section 1-50(6) in Section 1-46.1, with specific reference to "existing law" and presumed knowledge of judicial interpretations of the statute, is at least some evidence of approval of the Wilder line of cases.

In short, we re-affirm our understanding that "the [North Carolina] Supreme Court does not consider disease to be included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include

15

it." Hyer, 790 F.2d at 34 (quotation omitted). We also re-affirm our understanding that the Supreme Court of North Carolina has recognized that "the [North Carolina] legislature ha[s] long been cognizant of the difference between diseases on the one hand and other kinds of injury on the other from the standpoint of identifying legally relevant time periods." Bullard, 74 F.3d at 534 (quoting Wilder, 336 S.E.2d at 71). Thus, looking to the law of North Carolina's highest court and "giving appropriate effect to all its implications," Assicurazioni Generali, S.p.A., 160 F.3d at 1002, consistent with our precedents we anticipate that the Supreme Court of North Carolina would rule that Section 1-52(16) is not applicable to Stahle's claim arising from disease.

## IV.

The district court did not discuss the applicability of Hyer or Bullard in reaching its decision. Instead, leaning heavily on a decision of the Eleventh Circuit, Bryant v. United States, 768 F.3d 1378 (11th Cir. 2014), the district court concluded that the statutory text of Section 1-52(16) was facially unambiguous and applied to Stahle's disease claim. Although the Eleventh Circuit of course was not bound by our prior decisions in Hyer or Bullard, the district court was, and, as discussed earlier, erred in not applying our precedent.

However, even if Hyer and its progeny were not the law of this Circuit, and we were faced with determining the scope of

16

Section 1-52(16) without those precedents, we would still reverse. As discussed below, North Carolina courts are guided by the principle of "plain meaning" when construing statutes. While the district court correctly adduced that principle, it did not carry it into practice "as enunciated and applied by the state's highest court." Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 482 (4th Cir. 2007). The district court focused narrowly on the isolated text of subsection 16 to determine its plain meaning. However, the Supreme Court of North Carolina "does not read segments of a statute in isolation." Rhyne v. K-Mart Corp., 594 S.E.2d 1, 20 (N.C. 2004).

Read in the context of North Carolina's statutory limitations and repose scheme, Section 1-52(16) appears plainly to apply to some—but not all—personal injury claims. Specifically, it appears to apply to that set of personal injuries for which "bodily harm to the claimant . . . becomes apparent" at some point in time after the injury, N.C. Gen. Stat. § 1-52(16); that is, it applies to latent injuries.

This conclusion is further supported by North Carolina caselaw. Although the Supreme Court of North Carolina has not construed Section 1-52(16) specifically in a disease case, it has construed the statute in other contexts and also opined on its general operation in dicta. Weighing these cases, we conclude that the Supreme Court of North Carolina considers

17

Section 1-52(16) applicable only to latent injuries.  Because North Carolina law clearly establishes that a disease is not a latent injury, Wilder, 336 S.E.2d at 70-71, we anticipate that the Supreme Court of North Carolina would not consider Section 1-52(16) applicable to Stahle's disease claim.

A.

As the Supreme Court of North Carolina has explained, "[w]hen the language of a statute is clear and without ambiguity, it is the duty of [a court] to give effect to the plain meaning of the statute."  Diaz v. Div. of Soc. Servs., 628 S.E.2d 1, 3 (N.C. 2006).  Importantly, however, the Supreme Court of North Carolina "does not read segments of a statute in isolation." Rhyne, 594 S.E.2d at 20.  Instead, in determining "the plain meaning of the words chosen by the legislature," the Supreme Court of North Carolina reads those words "within the context of the statute." Brown v. Flowe, 507 S.E.2d 894, 895-96 (N.C. 1998); accord, e.g., Dickson, 737 S.E.2d at 370; Watson Indus. v. Shaw, 69 S.E.2d 505, 511 (N.C. 1952) ("Few words are so plain that the context or the

18

occasion is without capacity to enlarge or narrow their extension.") (quotation omitted).[4]

CTS urges us, in essence, to eschew a contextual reading of Section 1-52 and find that subsection 16 by itself is clear and unambiguous and applies to Stahle's claim.  Notwithstanding that this approach is inconsistent with the principles of North Carolina statutory construction just articulated, we think the argument fails on its own terms.

First, in Misenheimer, the Supreme Court of North Carolina stated: "We find N.C.G.S. § 1-52(16) to be ambiguous on its face." 637 S.E.2d at 175.  The Misenheimer court was not considering the clarity of Section 1-52(16) with respect to a disease claim, and a statute may be facially ambiguous as to only some applications while having discrete unambiguous application elsewhere.  However, Misenheimer significantly undermines CTS's argument that the statute is unambiguous even in isolation, and our analysis of subsection 16 certainly is informed by the Supreme Court of North Carolina's determination that the statute is "ambiguous on its face."

--------

[4] Cf. also, e.g., FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.  A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.") (internal citations and quotations omitted).

19

Second, CTS's principal argument that subsection 16 has unambiguous application to disease claims is that the text does not explicitly exclude disease claims. True enough. However, the text does not explicitly include disease claims either. Absent explicit textual inclusion of disease, CTS's argument turns on disease being unambiguously included within the set of "personal injuries" to which subsection 16 is addressed. We are skeptical, not least because the Supreme Court of North Carolina in Misenheimer specifically found that Section 1-52(16) "is ambiguous as to what is intended by the use of the words 'personal injury.'" 637 S.E.2d at 175.

Regardless, CTS's argument is based on reading subsection 16 in isolation. As noted above, this is not the approach to statutory construction articulated by the Supreme Court of North Carolina. To determine whether there is a clear and unambiguous plain meaning of the words in Section 1-52(16), we must read those words in their statutory context.[5]

---

[5] As noted, North Carolina courts "always presume[] that the Legislature acted with full knowledge of prior and existing law," including judicial interpretations and the common law. Dickson, 737 S.E.2d at 369 (quotation omitted). For example, in Rowan County Board of Education v. U.S. Gypsum Co., 418 S.E.2d 648 (N.C. 1992), the plaintiff school board brought an action to recover asbestos remediation costs. The last of the defendant's products had been installed 24 years before the plaintiff sued, and the defendant argued that a host of statutes of limitations and repose, including Section 1-52(5) and Section 1-50(6), barred the suit. Id. at 650-52. The Supreme Court of North Carolina found that the

20

Chapter 1 of the North Carolina General Statutes covers "Civil Procedure," within which Subchapter II covers "Limitations" and provides both general limitations on civil actions as well as limitations applicable to numerous specific types of civil actions. The first general provision, Section 1-15, states that "[c]ivil actions can only be commenced within the periods prescribed in this Chapter, after the cause of action has accrued, except where in special cases a different limitation is prescribed by statute." N.C. Gen. Stat. § 1-15(a). The "periods prescribed" are provided in a host of subsequent sections. The periods prescribed for "the commencement of actions, other than for the recovery of real property" are set forth in Article 5. Id. § 1-46.

Article 5 is divided into ten different sections, each of which enumerates the various types of actions that must be commenced within a certain period of time, ranging from 12 years, id. § 1-46.1, to two months, id. § 1-54.1. The sixth of these sections, Section 1-52, enumerates types of actions that must be

statutes contained an exception for the school board, as a political subdivision of the state, under the common law doctrine of nullum tempus occurrit regi ("time does not run against the king"). Id. at 651-54. The statutes in Rowan County, some of which are relevant here, contained no explicit textual reference to such an exception. We do not read that case as a departure from North Carolina's focus on plain meaning; we read it as further recognition that the plain meaning of words comes from context, and that context includes both the statutory and jurisprudential environments in which the statutory words were laid down.

commenced "[w]ithin three years." Id. § 1-52. Section 1-52 in turn is broken into twenty different subsections.

Most of these twenty subsections are similar in form, describing different types of civil actions; they comprise a list, enumerating those actions that are timely if brought "[w]ithin three years." Id. § 1-52. Grammatically, most of these subsections are incomplete. They are sentence fragments enumerating different categories of civil actions, and must be read in conjunction with the section's introductory text to pull in the "three years" language (and even then do not become grammatically complete sentences).

For example, the text of the second subsection reads only: "Upon the official bond of a public officer." Id. § 1-52(1a). Read with the introductory phrase at the beginning of Section 1-52, the combined text becomes: "Within three years an action . . . [u]pon the official bond of a public officer." This combined fragment, incorporated into the overarching general limitation provision of Section 1-15 leads to a complete statutory command: "Civil actions [upon the official bond of a public officer] can only be commenced within [three years], after the cause of action has accrued, except where in special cases a different limitation is prescribed by statute." Id. §§ 1-15(a), 1-52, 1-52(1a).

Relevant here, subsection 5 of Section 1-52 specifically limits actions "[f]or criminal conversation, or for any other

22

injury to the person or rights of another, not arising on contract and not hereafter enumerated." Id. § 1-52(5). The language "any other injury to the person or rights of another" is extremely broad, and appears to establish a three year statute of limitations for any non-contract-based action arising from an "injury to the person," unless the action is thereafter specifically enumerated.

Reading down the subsections of Section 1-52, we come at last to subsection 16 (as it read at the relevant time):

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

Id. § 1-52(16). This subsection is structured differently than most of the others in Section 1-52. It reads as grammatically complete sentences without recourse to Section 1-52's introductory text (in fact becoming ungrammatical when read with the "three years" introductory text). Nor can it easily be incorporated into the general limitation command of Section 1-15.

CTS argues that it is undisputed that the first sentence of subsection 16 sets forth a three-year statute of limitations for all causes of action covered by the provision, and that the second

sentence sets forth a ten-year repose period.[6]  CTS further argues

that subsection 16 by its express terms applies to all causes of

action "for personal injury."   Thus, the second sentence of

subsection 16 establishes a ten-year repose period for all causes

of action "for personal injury."   We disagree.[7]

---

[6] The distinction between statutes of limitations and repose
was thoroughly discussed in Waldburger v. CTS Corp., 723 F.3d 434,
441-42 (4th Cir. 2013), reversed 134 S. Ct. 2175 (2014).  However,
CTS's suggestion that Waldburger supports their argument misses
the mark.   The decisions in Waldburger concerned whether the
federal Comprehensive Environmental Response, Compensation, and
Liability Act of 1980 (CERCLA) pre-empted state statutes of repose,
including that contained in the second sentence of North Carolina
General Statute 1-52(16).   The Supreme Court in Waldburger held
that the North Carolina statute of repose was not preempted.  134
S. Ct. at 2185-88.   At issue here is whether the non-preempted
North Carolina statute applies to claims arising from disease.
This issue was not before the courts in Waldburger, and Waldburger
has no bearing on the current case.

[7] Although CTS chooses not to carry it so far, an argument
could be made that the second sentence of subsection 16 sweeps
even broader.   Read alone, the second sentence is devoid of any
language limiting it to a particular type of cause of action.   It
provides that "no cause of action shall accrue more than 10 years
from the last act or omission of the defendant giving rise to the
cause of action."  N.C. Gen. Stat. § 1-52(16).   Without context,
this could be read as a blanket bar on the accrual of any action
after ten years.

We are confident this is not the intended effect.   We would
expect that such a generally-applicable limitation on actions
would appear in the general provisions portion of the statute
(Article 3, "Limitations, General Provisions") rather than within
the sixteenth subsection of the sixth section within an article
governing only non-real property-based civil actions.   It is most
natural to read the second sentence of subsection 16 as applicable
only to those actions covered by the first sentence.   Such an
understanding also prevents conflict with various other statutes.
For example, if the ten-year period in the second sentence covered
all causes of action, then the twelve-year period in Section 1-
46.1, covering certain products liability actions, would be

24

The first sentence of subsection 16 does not say, expressly or otherwise, that "all causes of action for personal injury must be commenced within three years"; it says: "Unless otherwise provided by statute, for personal injury . . . the cause of action . . . shall not accrue until bodily harm to the claimant . . . becomes apparent." Id. § 1-52(16). The operative verb is "accrue," suggesting in the first instance that subsection 16 is an accrual provision. Further, the first sentence only has meaningful effect for those personal injuries for which the harm is not immediately apparent: that is, latent injuries. For personal injuries where the harm is immediately apparent, this provision would serve no meaningful purpose.

But most importantly, reading subsection 16 as encompassing all personal injury actions would render the personal injury language in the preceding subsection 5 meaningless. Subsection 5 establishes a three-year statute of limitation expressly for actions for "any other injury to the person." See, e.g., Misenheimer, 637 S.E.2d at 177 ("Personal injuries are covered in [Section] 1-52(5) . . . ."). Reading subsection 16 as CTS proposes

_____

meaningless. Cf., e.g., Lunsford v. Mills, 766 S.E.2d 297, 304 (N.C. 2014) (explaining that it is "fundamental" that courts should "not construe an individual section in a manner that renders another provision of the same statute meaningless") (quotation omitted); Brown v. Brown, 539 S.E.2d 621, 625 (N.C. 2000) ("Courts, of course, presume that the General Assembly would not intend something so absurd as contradicting itself in the same statute.")

25

would read the language of subsection 5 out of North Carolina's statutory scheme, a result strongly disfavored by North Carolina. The Supreme Court of North Carolina considers it "a fundamental principle of statutory interpretation that courts should evaluate a statute as a whole and not construe an individual section in a manner that renders another provision of the same statute meaningless." Lunsford v. Mills, 766 S.E.2d 297, 304 (N.C. 2014) (quotation omitted). We decline to construe subsection 16 in such a manner.

Reading North Carolina's statute as a whole, and heeding the Supreme Court of North Carolina's guidance that we should not construe one statutory provision so as to render another meaningless, we conclude that subsection 5 is the pertinent statute of limitation for civil actions for an "injury to the person." We conclude that subsection 16 in turn is an accrual provision that applies to a subset of those actions, namely those in which the harm is not immediately apparent, but rather "becomes apparent" at some later point in time. In other words, Section 1-52(16) applies to certain latent injuries. We think these conclusions are plain from the text of the North Carolina statute, and as further explained below, comport with North Carolina caselaw.

B.

26

While the Supreme Court of North Carolina has not directly addressed the applicability of Section 1-52(16) to disease claims, it has had occasion to opine generally on the operation of the statute. CTS argues that the Supreme Court of North Carolina has all but held subsection 16 applicable to disease claims, citing to language in two cases, Wilder and Dunn v. Pacific Employers Insurance Co., 418 S.E.2d 645 (N.C. 1992). While the language in Wilder and Dunn was dicta, well-considered dicta of a state's highest court is relevant to a federal court sitting in diversity. See, e.g., Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002).

At issue in Wilder was a legacy statute of repose, Section 1-15(b). Although Section 1-52(16) was not at issue, the Wilder court did reference the statute in discussing the purpose of Section 1-15(b). The Supreme Court of North Carolina noted that the "primary purpose" of Section 1-15(b) was "to change the accrual date from which the period of limitations begins to run on latent injury claims," and that Section 1-15(b) "[was] not intended to be a statute of limitations governing all negligence claims, such as the statute of limitations contained in the first clause of [Section] 1-52(16)." 336 S.E.2d at 69. From this, CTS argues that the Supreme Court of North Carolina considers Section 1-52(16) to govern all negligence claims.

27

CTS also points us to Dunn, where the issue was the timeliness of a wrongful death action. The decedent had been diagnosed with liver cancer in August 1985 and died a little less than two years later. 418 S.E.2d at 646. The wrongful death action was brought by his widow just less than two years after the decedent's death (or nearly four years after the diagnosis). Id. The operative statute, Section 1-53(4), provided a two-year limit on bringing wrongful death actions, but further barred an action where "the decedent would have been barred, had he lived, from bringing an action for bodily harm because of the provisions of [Section] 1-15(c) or [Section] 1-52(16)." Id. (quoting N.C. Gen. Stat. § 1-53(4)). The defendant in Dunn argued that Section 1-52(16) would have barred an action by the decedent, had he lived, three years after his diagnosis; since almost four years had passed, the suit should be barred. Id. at 647.

The Supreme Court of North Carolina rejected this argument, holding that the wrongful death statute's proviso only barred actions that were barred by the listed statutes within the decedent's lifetime. Id. at 647-48. Because the decedent died within three years of his diagnosis, his claim was not time-barred in life, and his widow had two years from his death to bring the wrongful death action. Id. CTS here argues that implicit in Dunn was a finding by the Supreme Court of North Carolina that Section 1-52(16) normally applied to claims arising from disease.

28

If the language in <u>Wilder</u> and <u>Dunn</u> constituted the Supreme Court of North Carolina's only extant pronouncements on Section 1-52(16), CTS's argument would have considerably more force. However, picking out just <u>Wilder</u> and <u>Dunn</u> from the caselaw is akin to "looking over a crowd and picking out your friends." <u>Yellow Freight Sys., Inc. v. Reich</u>, 8 F.3d 980, 987 (4th Cir. 1993) (quotation omitted). Other Supreme Court of North Carolina cases, including more recent cases with fuller analysis of Section 1-52(16), seriously undermine CTS's position.

For example, three years after <u>Wilder</u>, the Supreme Court of North Carolina decided <u>Boudreau v. Baughman</u>, 368 S.E.2d 849 (N.C. 1988). The plaintiff in <u>Boudreau</u> seriously injured himself using a chrome-metal chair manufactured by the defendant. The defendant asserted that the action was barred by several North Carolina statutes of repose, which the court ultimately rejected as it found the dispute was governed by Florida law. 368 S.E.2d at 853-56, 853 n.2. However, in discussing the potential applicability of North Carolina law, the Supreme Court stated:

> Defendants also contend that the action would be time-barred by N.C.G.S. § 1-52(16) . . . . We need not consider the effect of the ten-year period prescribed by section 1-52(16). This section replaced [legacy Section] 1-15(b) . . . and its primary purpose appears to have been the adoption of the "discovery" rule. That is, it was intended to apply to plaintiffs with latent injuries. It is undisputed that plaintiff was aware of his injury as soon as it occurred. Thus the statute is inapplicable on the facts of this case.

368 S.E.2d at 853 n.2 (internal citations omitted).  Boudreau indicates that the Supreme Court of North Carolina considers Section 1-52(16) "inapplicable" to plaintiffs who are "aware of [their] injury as soon as it occur[s]."  In other words, Section 1-52(16) "was intended to apply to plaintiffs with latent injuries." Id.

In 2006, the Supreme Court of North Carolina decided Misenheimer.  Misenheimer dealt directly with the interaction of Sections 1-52(5) and 1-52(16), though in an action for "criminal conversation" rather than disease.[8]  The court explained that Section 1-52(5) was "[t]he pertinent statute of limitations"[9] while Section 1-52(16) "establishes what is commonly referred to as the discovery rule, which tolls the running of the statute of limitations for torts resulting in certain latent injuries," though "such actions remain subject to the statute of repose provision in [Section] 1-52(16)."  637 S.E.2d at 175-76.  Like Boudreau, Misenheimer suggests to us that the Supreme Court of

---

[8] Section 1-52(5) covers actions "[f]or criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated." N.C. Gen. Stat. § 1-52(5).

[9] In Hyer, we indicated that Section 1-52(5) was the pertinent statute of limitations for disease claims.  See 790 F.2d at 34 ("[W]e note that Wilder also confirms . . . that when plaintiff sued within three years after his illness was first diagnosed, his suit was timely under N.C.G.S. § 1-52(5).").

North Carolina considers Section 1-52(16) applicable only in "such actions," that is, "torts resulting in certain latent injuries."

Importantly, the Misenheimer court further explained that the express reference to "criminal conversation" in Section 1-52(5) did not bar application of Section 1-52(16) in certain cases. 637 S.E.2d at 176. The Misenheimer defendant had noted that Section 1-52(16) stated that it applied "[u]nless otherwise provided by statute," and argued that Section 1-52(5)'s specific reference to "criminal conversation" meant that such actions were "otherwise provided by statute" and thus Section 1-52(16) could not apply. Id. The Supreme Court rejected this argument, specifically noting the effect such a reading would have on actions for personal injuries. The court noted that, in addition to criminal conversation, "[p]ersonal injuries are covered in [Section] 1-52(5)" and defendant's argument, if accepted, would bar application of Section 1-52(16) even though that section also "specifically applies to 'personal injury.'" Id. at 176-77. To harmonize the two provisions, the court found that "[Section] 1-52(5)'s reference to criminal conversation does not bar the application of [Section] 1-52(16) when the injury is latent." Id. at 176.

Following the reasoning in Misenheimer, we anticipate that the Supreme Court of North Carolina would find that Section 1-52(5) applies to personal injury actions, but that Section 1-52(5)'s

31

reference to personal injury does not bar the application of Section 1-52(16) to personal injury actions when the injury is latent. We understand that North Carolina law is settled that disease is not a latent injury; instead, the legal injury and awareness of that injury occur simultaneously at diagnosis. Wilder, 336 S.E.2d at 70-71. As such, Section 1-52(16) would not apply to a disease claim. Accord Boudreau, 368 S.E.2d at 853 n.2 ("[P]laintiff was aware of his injury as soon as it occurred. Thus [Section 1-52(16)] is inapplicable . . . .").

While there is perhaps some tension among the dicta in the cases discussed above, it is improbable that any court's dicta over the course of four decades would be perfectly harmonized for all future applications. (We suspect our own caselaw admits of some inconsistencies over that span.) However, looking to the well-considered dicta in these cases as a whole, and "giving appropriate effect to all its implications," Assicurazioni Generali, S.p.A., 160 F.3d at 1002, we conclude that the Supreme Court of North Carolina considers Section 1-52(16) only applicable to certain latent injuries, and because disease is not a latent injury, would not find Section 1-52(16) applicable to Stahle's claim.

V.

For the foregoing reasons, we reverse the district court's order and remand for further proceedings.

<u>REVERSED AND REMANDED</u>

THACKER, Circuit Judge, concurring:

I concur in the majority's outcome, but I write separately for three reasons. First, I would not rely so heavily on our decision in Hyer v. Pittsburgh Corning Corp., 790 F.2d 30 (4th Cir. 1986), which construed a North Carolina statute significantly different than the one at bar, and which has never been cited in a reported North Carolina decision. Second, I address Appellee's unfounded argument that there is no "meaningful difference" between the claims in CTS v. Waldburger, 134 S. Ct. 2175 (2014), and the claim in this case. Finally, I note that a North Carolina certified question mechanism would have provided us with a beneficial tool in deconstructing this novel and unsettled state law issue, which four circuits have now addressed with varying results.

I.

This case boils down to the meaning of the phrase "personal injury" in N.C. Gen. Stat. § 1-52(16). If the North Carolina Supreme Court would read this phrase to encompass disease claims, Appellant's claim is barred. If not, the claim proceeds.

A.

In determining whether disease claims fall within the meaning of "personal injury," the majority turns first to this

34

court's decision in <u>Hyer v. Pittsburgh Corning Corp.</u>, which states, "the [North Carolina] Supreme Court does not consider disease to be included within <u>a statute of repose directed at personal injury claims</u> unless the Legislature expressly expands the language to include it." 790 F.2d 30, 33-34 (4th Cir. 1986) (emphasis supplied) (internal quotation marks omitted). Because <u>Hyer</u> construed a different statute, relied on a North Carolina decision characterizing § 1-52(16) quite broadly, and has not been cited by a reported North Carolina decision, I would consider the passage above "non-binding dicta." See <u>Ante</u> at 9.

<u>Hyer</u> construed a North Carolina statute of repose, N.C. Gen. Stat. § 1-50(6), which provided a bar to recovery for damages "for personal injury" based on a product failure or defect, if the claim was brought more than six years after "the date of initial purchase for use or consumption." N.C. Gen. Stat. § 1-50(6) (1979). In concluding that § 1-50(6)'s statute of repose did not apply to claims based on disease, <u>Hyer</u> relied heavily on the North Carolina Supreme Court's decision in <u>Wilder v. Amatex Corp.</u>, 336 S.E.2d 66 (N.C. 1985), which held that the statute of repose in the repealed N.C. Gen. Stat. § 1-15(b) did not apply to disease claims. See <u>Hyer</u>, 790 F.2d at 33 (stating that in <u>Wilder</u>, the North Carolina Supreme Court "conclu[ded] that 'the legislature intended [§ 1-15(b)] to have no application to claims arising from disease'" (quoting <u>Wilder</u>, 336 S.E.2d at 73).

35

But in 1986, when Hyer stated the rule upon which the majority relies, § 1-52(16) had been on the books over six years, and even though it, too, contained a statute of repose ostensibly directed to "personal injur[ies]," Hyer failed to mention § 1-52(16). Moreover, Wilder specifically contrasted § 1-52(16) with § 1-15(b), stating, "We note, importantly, that G.S. 1-15(b) is not intended to be a statute of limitations governing all negligence claims, such as the statute of limitations contained in the first clause of G.S. 1-52(16)." Wilder, 336 S.E.2d at 69 (emphasis supplied). Thus, an equally permissible reading of Hyer—against the legal landscape at the time—is that § 1-52(16) was not included in the umbrella of "statutes of repose directed at personal injury claims" because it applied generally to "all negligence claims."

In addition, the language of § 1-15(b) differed significantly from the language of § 1-52(16). By its terms, § 1-15(b) applied to "cause[s] of action . . . having as an essential element bodily injury to the person . . . not readily apparent to the claimant at the time of its origin," and stated that in "such cases," i.e., cases involving a latent bodily harm, a 10-year statute of repose applies. Gen. Stat. § 1-15(b) (repealed 1979). Section 1-52(16), which replaced § 1-15(b), contains broader language, applying to "personal injury . . . cause[s] of action," and stating—without qualification—that "no cause of action shall

36

accrue" more than 10 years after the defendant's last act or omission.  As explained by the majority, we now have more guidance from North Carolina state courts as to the breadth of § 1-52(16). But at the time of the Hyer decision, Wilder was the only North Carolina decision comparing § 1-52(16)'s language to that of § 1-15(b), and it suggested that § 1-52(16) is much broader than its predecessor statute.  Therefore, Hyer's reading of Wilder—which construed a statute specifically encompassing claims involving bodily injuries not apparent to the claimant when they occur—does not dictate the same result for stare decisis purposes regarding a statute generally referencing "personal injur[ies]."

Finally, although certainly not dispositive, in predicting what the North Carolina Supreme Court would do in this situation, I am reluctant to afford substantial weight to a decision that has never been cited in a reported North Carolina state court decision.  Indeed, Hyer has only been cited by this court in four decisions in 30 years, and even then, only in the context of § 1-50(6).  See Bullard v. Dalkon Shield Trust, 74 F.3d 531, 533-34 (4th Cir. 1996); Guy v. E.I. DuPont de Nemours & Co., 792 F.2d 457, 459-60 (4th Cir. 1986); Silver v. Johns-Manville Corp., 789 F.2d 1078, 1080 (4th Cir. 1986); Burnette v. Nicolet, Inc., 818 F.2d 1098, 1101 (4th Cir. 1986).

B.

37

However, even without the binding authority of Hyer, I agree with the majority that the North Carolina Supreme Court would likely treat the case at hand as falling outside the scope of the statute of repose in § 1-52(16).

Post-Hyer, the North Carolina Supreme Court made clear that the phrase "personal injury" as used in § 1-52(16) "has a wide range of meanings"; is ambiguous; and placed in the proper context, must be a "latent" injury, i.e., an injury not "'reasonably . . . apparent'" to the claimant at the time it occurs. Misenheimer v. Burris, 637 S.E.2d 173, 175 (N.C. 2006) (quoting Gen. Stat. § 1-52(16) (2005)).

At first blush, one would think a disease is—or at least breeds—a latent injury. But that is not the way North Carolina sees it. North Carolina has recognized that diseases can be "the result [not] of a single incident but rather of prolonged exposure to hazardous conditions of a disease-causing agent." Booker v. Duke Med. Ctr., 256 S.E.2d 189, 204 (N.C. 1979). Thus, the "legal injury and awareness of that injury occur simultaneously at diagnosis." Ante at 33 (citing Wilder, 336 S.E.2d at 70-71).

For these reasons—and those more cogently set forth in Section IV of the majority opinion—I agree that the North Carolina Supreme Court would not view Appellant's disease claim as a "personal injury" under § 1-52(16).

38

Second, like the majority, I too reject Appellee's argument that the Supreme Court's decision in CTS Corp. v. Waldburger, 134 S. Ct. 2175 (2014), dictates our outcome. See Ante at 24 n.6. Appellee submits "there is no meaningful difference between the Waldburger claims and [Appellant]'s claim," and "[Appellant's] action was properly dismissed for the same reasons as in Waldburger." Appellee's Br. 8-9. It is true that in both cases, "the last alleged act or omission" of CTS occurred decades before suit was filed. Id. at 8. And it is also true that the statute of repose provision in § 1-52(16) applies to claims based on "physical damage to [one's] property" (one of the bases for Waldburger's nuisance claim) and "personal injury." Gen. Stat. § 1-52(16).

However, in Waldburger, the Supreme Court did not address whether the plaintiffs' claims may be subject to the statute of repose in Gen. Stat. § 1-52(16), as written. Rather, the issue in Waldburger was whether the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") preempted that statute of repose. After the Supreme Court's Waldburger decision, leaving the statute of repose intact, this case takes the next step of asking whether Appellant's disease claim falls within its parameters. In making this argument, CTS

basically ignores the crux of this appeal. Therefore, Waldburger is inapplicable here.

## III.

Finally, I write to express my view that a North Carolina certification procedure would have provided this panel with a beneficial tool. As we have noted many times, North Carolina is the only state in the Fourth Circuit without such a mechanism. See In re McCormick, 669 F.3d 177, 182 n.* (4th Cir. 2012) ("North Carolina law . . . does not provide a mechanism by which we could certify the question to North Carolina's Supreme Court, unlike the law in the other States in the circuit."); see also United States v. Vinson, 805 F.3d 120, 122 n.1 (4th Cir. 2015); Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013); Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 783 n.4 (4th Cir. 2012); E.M.A. ex rel. Plyler v. Cansler, 674 F.3d 290, 312 n.1 (4th Cir. 2012); MLC Auto., LLC v. Town of S. Pines, 532 F.3d 269, 284 (4th Cir. 2008); N. Carolina Right to Life, Inc. v. Bartlett, 168 F.3d 705, 711-12 n.1 (4th Cir. 1999). Indeed, North Carolina remains the only state in the nation never to have enacted some form of certification procedure. See Eric Eisenberg, A Divine Comity: Certification (at Last) in North Carolina, 58 Duke L. J. 69, 71 (2008). This is despite numerous calls to do so. See id. at 71 n.18 (citing Jessica Smith, Avoiding Prognostication and Promoting

40

*Federalism: The Need for an Inter-Jurisdictional Certification Procedure in North Carolina*, 77 N.C. L. Rev. 2123, 2125 (1999)); Jona Goldschmidt, *Certification of Questions of Law: Federalism in Practice* 98 (1995); J. Donald Hobart, Jr., Note, *B. Currie v. United States and the Elusive "Duty to Commit" Dangerous Mental Patients: Conflicting Views of North Carolina Law from the Federal Courts*, 66 N.C. L. Rev. 1311, 1334 & n.162 (1988)).

As a federal court sitting in diversity, "our role is to apply governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue." *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008) (internal quotation marks omitted). Because the issue presented in this appeal is not settled by the North Carolina courts, we must, in a sense, "trade our judicial robes for the garb of prophet." *Walters v. Inexco Oil Co.*, 670 F.2d 476, 478 (5th Cir. 1982) (alteration and internal quotation marks omitted). Some characterize the process of predicting what a state court would do as "speculative or crystal-ball gazing," but without the benefit of a certification procedure, "it is a task which we may not decline." *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662 (3d Cir. 1980).

The case at hand presents an ideal candidate for certification, as the issue before us is especially "novel" and "unsettled." *See* *Grattan v. Bd. of Sch. Comm'rs of Baltimore City*,

41

805 F.2d 1160, 1164 (4th Cir. 1986) (certification is appropriate "when [we are] required to address a novel issue of local law which is determinative in the case before [us]"); cf. Md. Code Ann., Cts. & Jud. Proc. § 12-603 (providing that the Court of Appeals may answer a certified question if "[1] the answer may be determinative of an issue in pending litigation in the certifying court and [2] there is no controlling appellate decision, constitutional provision, or statute of this State"); Va. Sup. Ct. Rule 5:40(a) (Supreme Court may answer a certified question if the "question of Virginia law is determinative in any proceeding pending before the certifying court and it appears there is no controlling precedent on point in the decisions of this Court or the Court of Appeals of Virginia").

The Supreme Court of North Carolina itself has sent mixed signals about the scope of § 1-52(16). Compare Dunn v. Pac. Emp'rs Ins. Co., 418 S.E.2d 645, 647-48 (N.C. 1992) (holding that, in an action based on the decedent's death from cancer based on exposure to hazardous chemicals, § 1-52(16) would be the proper statute of limitations for the underlying claim for bodily injury), and Wilder, 336 S.E.2d at 69 (suggesting that "the statute of limitations contained in the first clause of G.S. 1-52(16)" "govern[s] all negligence claims"), with Boudreau v. Baughman, 368 S.E.2d 849, 853 n.2 (N.C. 1988) (suggesting that § 1-52(16) was "intended to apply to plaintiffs with latent injuries," and is

42

"inapplicable" to claimants who are "aware of [their] injury as soon as it occur[s]"), and Misenheimer, 637 S.E.2d at 175-76 (explaining that latent injury claims remain subject to the statute of repose in § 1-52(16)); see also Ante at 29-30.

And outside of North Carolina's borders, after the publication of this decision, four circuits will have addressed this state law question, all with different views of the statute's scope. Compare In re Dow Corning Corp., 778 F.3d 545, 552 (6th Cir. 2015) ("The Fourth Circuit has consistently applied th[e] 'disease exception,' first announced by the North Carolina Supreme Court in Wilder v. Amatex, to diseases incurred from exposure to harmful products"), and Bryant v. United States, 768 F.3d 1378, 1381 (11th Cir. 2014) (holding that the statute of repose in § 1-52(16) unambiguously applies to disease claims), and Klein v. DePuy, Inc., 506 F.3d 553, 559 (7th Cir. 2007) (in holding that "§ 1-52(16) is not limited to latent injury claims," relying on Dunn and Wilder, rejecting Hyer, and ignoring Misenheimer).

North Carolina's General Assembly acted swiftly to revise § 1-52(16) with regard to groundwater contamination claims after the Supreme Court's Waldburger decision. Since our crystal ball is warmed up, perhaps we can predict that the General Assembly will also act swiftly, after this decision, to delineate the parameters of the statute of repose in that same statute -- including whether disease claims are indeed exempt, and if so,

what is a "disease" claim, exactly.  Cf. Dow Corning, 778 F.3d at 555 (Sutton, J., dissenting) (explaining that the so-called "disease exception" in § 1-52(16) "appears limited to diseases that arise from exposure to a harmful product at one's jobsite" (emphasis in original)).  And maybe the State of North Carolina will likewise act swiftly to create a certified question mechanism, giving its own state courts a chance to influence the interpretation of the laws operating within its borders, rather than leaving it to the federal courts to divine how North Carolina should operate.